RASSMUSSEN *v.* UNITED STATES.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF ALASKA.

No. 51.   Argued November 4, 1904.—Decided April 10, 1905.

The treaty with Russia concerning Alaska, instead of exhibiting, as did the treaty with Spain respecting the Philippine Islands, the determination to reserve the question of the status of the acquired territory for ulterior action by Congress, manifested a contrary intention to admit the inhabitants of the ceded territory to the enjoyment of citizenship, and expressed the purpose to incorporate the territory into the United States.

Under the treaty with Russia ceding Alaska and the subsequent legislation of Congress, Alaska has been incorporated into the United States and the Constitution is applicable to that Territory, and under the Fifth and Sixth Amendments Congress cannot deprive one there accused of a misdemeanor of trial by a common law jury, and that § 171 of the Alaska Code, 31 Stat. 358, in so far as it provides that in trials for misdemeanors six persons shall constitute a legal jury, is unconstitutional and void.

THE facts are stated in the opinion.

*Mr. R. W. Jennings* and *Mr. W. E. Crews* for plaintiff in error submitted:

Section 171, p. 179, Carter's Annotated Alaska Codes, providing that in trials for misdemeanors six persons shall constitute a legal jury, was taken verbatim from the Oregon Code, with the proviso added.

That portion of § 171 authorizing a trial by a jury of six persons is void, because it deprives a person of the right of trial by a jury of twelve competent, impartial men as guaranteed to every citizen by the provisions of the Constitution, and Congress has no power under the Constitution to pass an act authorizing a trial in a criminal case by a jury of less than twelve men.

The terms "jury" and "trial by jury" are and always have been well known in the language of the law. They were used at the adoption of the Constitution, and always it is believed before that time; and almost since in a single sense. Cooley's Const. Lim. 391; 1 Bishop Crim. Procedure, §§ 764 *et seq; Flint River Steamboat Co.* v. *Foster,* 5 Georgia, 195; *Stoppe* v. *Commonwealth,* 74 Pa. St. 458; Wharton's Law Dict., Title "Challenge" U. S. Crim. Law (Lewis), 611; *Worke* v. *State,* 2 Ohio St. 277; *People* v. *Bodine,* 1 Denio, 304; *Freeman* v. *People,* 4 Denio, 34; *Wyheimer* v. *People,* 15 N. Y. 424; *Cancemei* v. *People,* 16 N. Y. 504; *People* v. *Williams,* 6 California, 207; *Cooley* v. *State,* 38 Texas, 637; *Ingersoll* v. *Wilson,* 2 W. Va. 59; *Nevada* v. *McClare,* 2 Nevada, 42, 60.

The provisions of the Constitution relating to the right of the trial by jury in suits at common law apply to the Territories of the United States. *Webster* v. *Reid,* 2 How. 437, 460; *Publishing Co.* v. *Fisher,* 166 U. S. 464; *Springville* v. *Thomas,* 166 U. S. 707; *Reynolds* v. *United States,* 98 U. S. 145, 154; *Callan* v. *Wilson,* 127 U. S. 540, 548; *Thompson* v. *Utah,* 170 U. S. 343, citing *Mormon Church Case,* 136 U. S. 1, 44; *Bank* v. *Yankton,* 101 U. S. 129; *Murphy* v. *Ramsay,* 114 U. S. 15, 44.

Such an act can not be sustained as a police regulation; for, as such, it would be equally obnoxious. Citizens of Alaska are

guaranteed the constitutional right of a trial by jury. They are under the direct and complete jurisdiction of the United States. The courts are clothed with the power and jurisdiction of Circuit and District Courts of the United States. Section 367, p. 432, Alaska Code; Art. 3, Treaty of Cession between United States and Russia.

*Mr. Assistant Attorney General Robb* for the United States: Cases cited by plaintiff in error do not apply as the Constitution has not been extended over the Territory as it had been in the cases cited. This case is controlled by *Hawaii* v. *Mankichi,* 190 U. S. 197; *Dorr* v. *United States,* 195 U. S. 138; and see *Downes* v. *Bidwell,* opinion Brown, J., 182 U. S. 280.

As to Art. 3 of the treaty with Russia it was intended to extend, and no doubt did extend, to the civilized inhabitants of the Territory certain fundamental attributes and privileges of American citizenship, but it will hardly be contended that it was thereby intended to extend all the provisions of the Constitution to this barren and desolate region, peopled as it was by savages and an alien race, wholly out of sympathy with our customs and institutions.

As to legislation regarding Alaska see §§ 2, 9, 14, 23 Stat. 24; Crim. Code, Alaska, March 3, 1899, 30 Stat. 1253; Act of June 6, 1900, 31 Stat. 321; § 1891, Rev. Stat., does not cover Alaska as it is not an organized Territory. And see Standard and Century Dictionaries, *Sub* "Territory." *The Coquitlam,* 163 U. S. 346, and *Binns* v. *United States,* 194 U. S. 486, do not decide that Alaska is organized Territory. And see *In re Lane,* 135 U. S. 443.

MR. JUSTICE WHITE delivered the opinion of the court.

The plaintiff in error was indicted for violating section 127 of the Alaska Code, prohibiting the keeping of a disreputable house and punishing the offense by a fine or imprisonment in the county jail.

As stated in the bill of exceptions, when the case was called

the court announced "that the cause would be tried before a jury composed of six jurors," in accordance with section 171 of the Code for Alaska adopted by Congress, wherein, among other things, it was provided as follows (31 Stat. 321, 359): "That hereafter in trials for misdemeanors six persons shall constitute a legal jury." To this announcement by the court an exception was duly preserved. A jury of six persons was then empanelled, when the objection was renewed and a demand made for a common law jury, which was refused, and an exception was again taken.

To a verdict and judgment of conviction this writ is prosecuted directly to this court, reliance for a reversal being had on the violation of the Constitution alleged to have resulted from the trial of the case by a jury of six persons and upon other errors of law which, it is asserted, the court committed in the course of the trial.

At the threshold of the case lies the constitutional question whether Congress had power to deprive one accused in Alaska of a misdemeanor of trial by a common law jury, that is to say, whether the provision of the act of Congress in question was repugnant to the Sixth Amendment to the Constitution of the United States.

At the bar the Government did not deny that offenses of the character of the one here prosecuted could only be tried by a common law jury, if the Sixth Amendment governed. The Government, moreover, did not dispute the obvious and fundamental truth that the Constitution of the United States is dominant where applicable. The validity of the provision in question is therefore sought to be sustained upon the proposition that the Sixth Amendment to the Constitution did not apply to Congress in legislating for Alaska. And this rests upon two contentions which we proceed separately to consider.

1. *Alaska was not incorporated into the United States, and therefore the Sixth Amendment did not control Congress in legislating for Alaska.*

If the premise, that is, the status of Alaska, be conceded, the conclusion deduced from it is established by the previous rulings of this court. In *Dorr* v. *United States*, 195 U. S. 138, the question was whether the Sixth Amendment was controlling upon Congress in legislating for the Philippine Islands. Applying the principles which caused a majority of the judges who concurred in *Downes* v. *Bidwell*, 182 U. S. 244, to think that the uniformity clause of the Constitution was inapplicable to Porto Rico, and following the ruling announced in *Hawaii* v. *Mankichi*, 190 U. S. 197, it was decided that, whilst by the treaty with Spain the Philippine Islands had come under the sovereignty of the United States and were subject to its control as a dependency or possession, those Islands had not been incorporated into the United States as a part thereof, and therefore Congress, in legislating concerning them, was subject only to the provisions of the Constitution applicable to territory occupying that relation. The power to acquire territory without incorporating it into the United States as an integral part thereof, as we have said, was sustained upon the reasoning expounded in the opinion of three, if not of four, of the judges who concurred in the judgment in *Downes* v. *Bidwell*, that reasoning being in effect adopted in the *Dorr case* as the basis of the ruling there made, the court saying (p. 143:)

"Until Congress shall see fit to incorporate territory ceded by treaty into the United States, we regard it as settled by that decision (*Downes* v. *Bidwell*) that the territory is to be governed under the power existing in Congress to make laws for such territories and subject to such constitutional restrictions upon the powers of that body as are applicable to the situation."

And in view of the status of the Philippine Islands it was decided that the Sixth Amendment was *not applicable to those* Islands, and therefore Congress, when it legislated concerning them, was not controlled by the provisions of that Amendment. It would serve no useful purpose to reexpress the reasons supporting this conclusion, and we content ourselves with quoting

the summing up made by the court in the opinion in the *Dorr case,* as follows (p. 149):

"We conclude that the power to govern territory, implied in the right to acquire it, and given to Congress in the Constitution in Article IV, § 3, to whatever other limitations it may be subject, the extent of which must be decided as questions arise, does not require that body to enact for ceded territory, not made a part of the United States by Congressional action, a system of laws which shall include the right of trial by jury, and that the Constitution does not, without legislation and of its own force, carry such right to territory so situated."

We are brought then to determine whether Alaska has been incorporated into the United States as a part thereof, or is simply held, as the Philippine Islands are held, under the sovereignty of the United States as a possession or dependency.

Concerning the test to be applied to determine whether in a particular case acquired territory has been incorporated into and forms a part of the United States, we do not deem it necessary to review the general subject, again contenting ourselves by quoting a brief passage from the opinion in *Dorr* v. *United States,* summing up the reasons which controlled in determining that the Philippine Islands were not incorporated, viz. (p. 143):

"If the treaty-making power could incorporate territory into the United States without Congressional action, it is apparent that the treaty with Spain, ceding the Philippines to the United States, carefully refrained from so doing; for it is expressly provided that (Article IX) 'the civil rights and political status of the native inhabitants of the territories hereby ceded to the United States shall be determined by the Congress.' In this language it is clear that it was the intention of the framers of the treaty to reserve to Congress, so far as it could be constitutionally done, a free hand in dealing with these newly-acquired possessions.

"The legislation upon the subject shows that not only has Congress hitherto refrained from incorporating the Philippines

into the United States, but in the act of 1902, providing for temporary civil government, 32 Stat. 691, there is express provision that section eighteen hundred and ninety-one of the Revised Statutes of 1878 shall not apply to the Philippine Islands."

This brings us to consider the treaty by which Alaska was acquired and the action of Congress concerning that acquisition, for the purpose of ascertaining whether within the criteria referred to in *Downes* v. *Bidwell* and adopted and applied in *Dorr* v. *United States*, Alaska was incorporated into the United States.

The treaty concerning Alaska, instead of exhibiting, as did the treaty respecting the Philippine Islands, the determination to reserve the question of the status of the acquired territory for ulterior action by Congress, manifested a contrary intention, since it is therein expressly declared, in Article 3, that:

"The inhabitants of the ceded territory shall be admitted to the enjoyment of all the rights, advantages and immunities of citizens of the United States; and shall be maintained and protected in the free enjoyment of their liberty, property and religion."

This declaration, although somewhat changed in phraseology, is the equivalent, as pointed out in *Downes* v. *Bidwell*, of the formula employed from the beginning to express the purpose to incorporate acquired territory into the United States, especially in the absence of other provisions showing an intention to the contrary. And it was doubtless this fact conjoined with the subsequent legislation of Congress which led to the following statement concerning Alaska made in the opinion of three, if not four, of the judges who concurred in the judgment of affirmance in *Downes* v. *Bidwell* (p. 335):

"Without referring in detail to the acquisition from Russia of Alaska, it suffices to say that that treaty also contained provisions for incorporation and was acted upon exactly in accord with the practical construction applied in the case of the acquisitions from Mexico as just stated."

Presumably it was also a consideration of the character of the rights conferred by the treaty by which Alaska was acquired, and the legislation of Congress concerning that Territory, to which we shall hereafter refer, which caused Mr. Justice Gray, in his concurring opinion in *Downes* v. *Bidwell*, to say (p. 345):

"The cases now before the court do not touch the authority of the United States over the Territories, in the strict and technical sense, being those which lie within the United States, as bounded by the Atlantic and Pacific Oceans, the Dominion of Canada and the Republic of Mexico, and the Territories of Alaska and Hawaii, but they relate to territory in the broader sense, acquired by the United States by war with a foreign State."

. That Congress, shortly following the adoption of the treaty with Russia, clearly contemplated the incorporation of Alaska into the United States as a part thereof, we think plainly results from the act of July 20, 1868, concerning internal revenue taxation, c. 186, section 107, 15 Stat. 125, 167, and the act of July 27, 1868, c. 273, extending the laws of the United States relating to customs, commerce and navigation over Alaska and establishing a collection district therein. 15 Stat. 240. And this is fortified by subsequent action of Congress, which it is unnecessary to refer to.

Indeed, both before and since the decision in *Downes* v. *Bidwell* the status of Alaska as an incorporated Territory was and has been recognized by the action and decisions of this court. By the sixth section of the judiciary act of March 3, 1891, 26 Stat. 826, it was made the duty of this court to assign the several Territories of the United States to particular circuits; and in execution of this law this court, by an order promulgated May 11, 1891, assigned the Territory of Alaska to the ninth judicial circuit. *Steamer Coquitlam* v. *United States*, 163 U. S. 346. That case was a suit in admiralty, brought by the United States in the District Court of Alaska for the forfeiture of the steamer Coquitlam, because of a violation of the revenue laws

of the United States. From a decree rendered in favor of the United States an appeal was prosecuted to the Circuit Court of Appeals for the Ninth Circuit. The United States challenged the jurisdiction of the Circuit Court of Appeals upon the grounds: 1. That the District Court of Alaska was not a District Court within the meaning of the sixth section of the judiciary act of 1891, and was not a District Court belonging to the Ninth Circuit; 2. That the District Court of Alaska was not the Supreme Court of a Territory within the meaning of the order of this court. The Circuit Courts of Appeal certified the question of jurisdiction. After fully reviewing the legislation of Congress relating to Alaska and stating the general appellate power of the Circuit Court of, Appeal over judgments and decrees of the District and Circuit Courts, it was decided that under the authority granted to the Circuit Courts of Appeal by the fifteenth section of the judiciary act of March 3, 1891, to review judgments of the Supreme Court of any Territory assigned to such circuit by this court, the Circuit Court of Appeals of the Ninth Circuit possessed appellate jurisdiction over the cause. In the course of the opinion it was declared (p. 352):

"Alaska is one of the Territories of the United States. It was so designated in that order (referring to the order of this court assigning to the ninth circuit) and has always been so regarded. And the court established by the act of 1884 is the court of last resort within the limits of that Territory. It is, therefore, in every substantial sense the Supreme Court of that Territory."

In *Binns* v. *United States*, 194 U. S. 486, the question was this: The penal code for Alaska imposed certain license taxes. The plaintiff in error was convicted for not paying such a tax, and the case was brought to this court on the contention that the act of Congress levying the tax was repugnant to the clause of the Constitution requiring uniformity throughout the United States, as licenses of the character complained of were imposed only in Alaska. After referring to the statements concerning

Alaska contained in the concurring opinions in *Downes* v. *Bidwell*, the one written by Mr. Justice Gray and the other by Mr. Justice White, and after approvingly citing the passage from the *Coquitlam case* above referred to, the court declared it to be settled that Alaska had been undoubtedly incorporated into the United States, and hence conceded that the license complained of was invalid if levied by Congress under the general grant in the Constitution of the power of taxation. The legislation in question was, however, sustained on the exceptional ground that Congress had therein merely exerted its authority as a local legislature for Alaska.

It follows, then, from the text of the treaty by which Alaska was acquired, from the action of Congress thereunder and the reiterated decisions of this court, that the proposition that Alaska is not incorporated into and a part of the United States is devoid of merit, and therefore the doctrine settled as to unincorporated territory is inapposite and lends no support to the contention that Congress in legislating for Alaska had authority to violate the express commands of the Sixth Amendment.

This brings us to the second proposition, which is—

2. *That even if Alaska was incorporated into the United States, as it was not an organized Territory, therefore the provisions of the Sixth Amendment were not controlling on Congress when legislating for Alaska.*

We do not stop to demonstrate from original considerations the unsoundness of this contention and its irreconcilable conflict with the essential principles upon which our constitutional system of government rests. Nor do we think it is required to point out the inconsistency which would arise between various provisions of the Constitution if the proposition was admitted, or the extreme extension on the one hand and the undue limitation on the other of the powers of Congress which would be occasioned by conceding it. This is said, because, in our opinion, the unsoundness of the proposition is conclusively established by a long line of decisions. *Webster* v. *Reid,*

11 How. 437; *Reynolds* v. *United States,* 98 U. S. 145; *Callan* v. *Wilson,* 127 U. S. 540; *American Publishing Co.* v. *Fisher,* 166 U. S. 464; *Springville* v. *Thomas,* 166 U. S. 707; *Thompson* v. *Utah,* 170 U. S. 343; *Capital Traction Co.* v. *Hof,* 174 U. S. 1; *Black* v. *Jackson,* 177 U. S. 349.

The argument by which the decisive force of the cases just cited is sought to be escaped is that as when the cases were decided there was legislation of Congress extending the Constitution to the District of Columbia or to the particular territory to which a case may have related, therefore the decisions must be taken to have proceeded alone upon the statutes and not upon the inherent application of the provisions of the Fifth, Sixth and Seventh Amendments to the District of Columbia or to an incorporated Territory. And, upon the assumption that the cases are distinguishable from the present one upon the basis just stated, the argument proceeds to insist that the Sixth Amendment does not apply to the Territory of Alaska, because section 1891 of the Revised Statutes only extends the Constitution to the organized Territories, in which, it is urged, Alaska is not embraced.

Whilst the premise as to the existence of legislation declaring the extension of the Constitution to the Territories with which the cases were respectively concerned is well founded, the conclusion drawn from that fact is not justified. Without attempting to examine in detail the opinions in the various cases, in our judgment it clearly results from them that they substantially rested upon the proposition that where territory was a part of the United States the inhabitants thereof were entitled to the guarantees of the Fifth, Sixth and Seventh Amendments, and that the act or acts of Congress purporting to extend the Constitution were considered as declaratory merely of a result which existed independently by the inherent operation of the Constitution. It is true that in some of the opinions both the application of the Constitution and the statutory provisions declaring such application were referred to, but in others no reference to such statutes was made,

and the cases proceeded upon a line of reasoning, leaving room for no other view than that the conclusion of the court was rested upon the self-operative application of the Constitution. *Springville* v. *Thomas*, 166 U. S. 707; *Thompson* v. *Utah*, 170 U. S. 343; *Capital Traction Co.* v. *Hof*, 174 U. S. 1; *Black* v. *Jackson*, 177 U. S. 349.

And this result of the cases will be made clear by a brief reference to some of the opinions. In *Thompson* v. *Utah*, considering a law of the State of Utah, which provided that a jury in a criminal cause should consist of only eight persons, the statute was held to be *ex post facto* and void in its application to felonies committed before the Territory became a State, "because, in respect of such crimes, the Constitution of the United States gave the accused, at the time of the commission of his offense, the right to be tried by a jury of twelve persons, and made it impossible to deprive him of his liberty except by the unanimous verdict of such a jury."

In *Springville* v. *Thomas* it was contended that the territorial legislature of Utah was empowered by Congress, in the organic act of the Territory, to dispense with unanimity of the jurors in rendering a verdict in a civil case. The court said (p. 708): "In our opinion the Seventh Amendment secured unanimity in finding a verdict as an essential feature of trial by jury in common law cases, and the act of Congress could not impart the power to change the constitutional rule, and could not be treated as attempting to do so."

Again, in *Capital Traction Co.* v. *Hof*, 174 U. S. 1, no reference whatever being made to the statute of February 21, 1871, extending the provisions of the Constitution to the District of Columbia (15 Stat. 419), it was declared (p. 5): "It is beyond doubt, at the present day, that the provisions of the Constitution of the United States securing the right of trial by jury, whether in civil or criminal cases, are applicable to the District of Columbia."

And in *Black* v. *Jackson*, 177 U. S. 349, speaking of a law of the Territory of Oklahoma, it was said (p. 363):

"And it also fails to recognize the provisions of the Seventh Amendment securing the right of trial by jury in 'suits at common law,' where the value in controversy exceeds twenty dollars. That amendment, so far as it secures the right of trial by jury, applies to judicial proceedings in the Territories of the United States, *Webster* v. *Reid*, 11 How. 437, 460; *American Publishing Co.* v. *Fisher*, 166 U. S. 464, 466; *Springville* v. *Thomas*, 166 U. S. 707. So that a court of a Territory authorized as Oklahoma was to pass laws not inconsistent with the Constitution of the United States, 26 Stat. 81, 84, c. 182, § 6, could not proceed in a 'common law' action as if it were a suit in equity and determine by mandatory injunction rights for the protection or enforcement of which there was a plain and adequate remedy at law according to the established distinctions between law and equity."

As it conclusively results from the foregoing considerations that the Sixth Amendment to the Constitution was applicable to Alaska, and as of course being applicable it was controlling upon Congress in legislating for Alaska, it follows that the provision of the act of Congress under consideration depriving persons accused of a misdemeanor in Alaska of a right to trial by a common law jury, was repugnant to the Constitution and void. Having disposed of the constitutional question, we deem it unnecessary to review the other alleged errors.

The judgment must therefore be reversed and the case remanded with directions to set aside the verdict and grant a new trial.

*And it is so ordered.*


Mr. Justice Harlan concurring.

My views in reference to what are called the Insular Questions have been fully expressed in the opinions filed by me in *Downes* v. *Bidwell*, 182 U. S. 244, 375; *Hawaii* v. *Mankichi*, 190 U. S. 197, 226; *Dorr* v. *United States*, 195 U. S. 138, 154. I adhere to what has been said in those opinions, and do not

care to restate here the grounds upon which I proceeded in former cases.

The particular question arising in the present case is whether that section of the act of Congress of June 6, 1900, c. 786, relating to Alaska, which provides "that hereafter in trials for misdemeanors six persons shall constitute a legal jury," is consistent with the Constitution of the United States. I content myself in this case with stating only the general reasons for the conclusion which I have reached on that question.

Immediately upon the ratification in 1867 of the treaty by which Alaska was acquired from Russia, that Territory, as I think, came under the complete, sovereign jurisdiction and authority of the United States, and, without any formal action on the part of Congress in recognition or enforcement of the treaty, and whether Congress wished such a result or not, the inhabitants of that Territory became at once entitled to the benefit of all the guarantees found in the Constitution of the United States for the protection of life, liberty, and property.

After such ratification no person charged with the commission of a crime against the United States in that Territory could be legally tried therefor otherwise than by what this court has adjudged to be the jury of the Constitution.

The constitutional requirement that "the trial of all crimes, except in cases of impeachment, shall be by jury" means, as this court has adjudged, a trial by the historical, common law jury of twelve persons, and applies to all crimes against the United States committed in any territory, however acquired, over which, for purposes of government, the United States has sovereign dominion.

No tribunal or person can exercise authority involving life or liberty, in any territory of the United States, organized or unorganized, except in harmony with the Constitution.

Congress cannot suspend the operation of the Constitution in any territory after it has come under the sovereign authority of the United States, nor, by any affirmative enactment, or

by mere non-action, can Congress prevent the Constitution from being the supreme law for any peoples subject to the jurisdiction of the United States.

The power conferred upon Congress to make needful rules and regulations respecting the Territories of the United States does not authorize Congress to make any rule or regulation inconsistent with the Constitution or violative of any right secured by that instrument.

The proposition that a people subject to the full authority of the United States for purposes of government, may, under any circumstances, or for any period of time, long or short, be governed, as Congress pleases to ordain, without regard to the Constitution, is, in my judgment, inconsistent with the whole theory of our institutions.

If the Constitution does not become the supreme law in a Territory acquired by treaty, and whose inhabitants are under the dominion of the United States, until Congress, in some distinct form, shall have expressed its will to that effect, it would necessarily follow that, by positive enactment, or simply by non-action, Congress, under the theory of "incorporation," and although a mere creature of the Constitution, could forever withhold from the inhabitants of such Territory the benefit of the guaranties of life, liberty and property as set forth in the Constitution. I cannot assent to any such doctrine. I cannot agree that the supremacy of the Constitution depends upon the will of Congress.

As these are my views upon the underlying questions presented by the record, I cannot concur in all the reasoning in the opinion of the court. But I entirely concur in the judgment holding the act of Congress in question to be void. I do so, not upon the ground that Alaska had been previously "incorporated" into the United States by the legislation of Congress, but upon the ground that the right of the accused to a trial by the jury of the Constitution became complete immediately upon the acquisition of Alaska by treaty, and before any legislation upon the subject by Congress—indeed,

without any power in Congress to add to or impair or destroy that right.

Mr. Justice Brown concurring.

I am disposed to concur in the conclusion of the court upon the ground that, by the treaty of cession with Russia, it was provided that "the inhabitants of the ceded territory shall be admitted to enjoy all the rights, advantages and immunities of citizens of the United States; and shall be maintained and protected in the free enjoyment of their liberty, property and religion." I am inclined to think, though with some doubt, that those words include a right to a trial by a jury, as understood among us from the adoption of the Constitution. I certainly should not dissent if the case were put upon that ground.

The tenor of the opinion, however, is such that I should be doing an injustice to myself if I failed to express my views upon the doctrine of incorporation. My position regarding the applicability of the Constitution to newly-acquired territory is contained in the opinion delivered by me in *Downes* v. *Bidwell,* 182 U. S. 244. It is simply that the Constitution does not apply to territories acquired by treaty until Congress has so declared, and that in the meantime, under its power to regulate the Territories, it may deal with them regardless of the Constitution, except so far as concerns the natural rights of their inhabitants to life, liberty and property.

A different view, however, was expressed in a concurring opinion by Mr. Justice White, to the effect that when Congress "incorporated" territory into the United States it resulted that in governing such territory "all the limitations of the Constitution which are applicable to Congress in exercising this authority necessarily limit its power on this subject. It follows also that every provision of the Constitution which is applicable to the Territories is also controlling therein. . . . And the determination of what particular provision of the Constitution is applicable, generally speaking, in all cases,

involves an inquiry into the situation of the territory, and its relations to the United States." The question was thus briefly stated: "Had Porto Rico, at the time of the passage of the act in question, been incorporated into and become an integral part of the United States?" If it had, the inference was that the Constitution applied in all its force.

This, however, was not the opinion of the court; it was certainly not the opinion of the Justice who announced the conclusion and judgment of the court; it was wholly disclaimed by the four dissenting Justices, who held that the Constitution applied the moment the territory was ceded and became the property of the United States, and that no act of incorporation was necessary. It was simply the individual opinion of three members of the court. The point was not pressed upon our attention in the briefs or arguments of counsel in that case. It is but faintly suggested in the briefs in this case. It has never since that time received the endorsement of this court, and in my opinion is wholly unnecessary to the disposition of this case.

My own view is, and has been, that Congress in dealing with newly-acquired territory is unfettered by the Constitution, unless it formally or by implication extends the Constitution to it; and that it may accept a cession of territory, institute a temporary government there, as it has done in a large number of instances, without thereby extending the Constitution over it. In the general act, Rev. Stat. sec. 1891, Congress did declare that "the Constitution and all laws of the United States which are not locally inapplicable, shall have the same force and effect within all the *organized* Territories, and in every Territory hereafter organized, as elsewhere within the United States." If the act of May 17, 1884, providing a civil government for Alaska, 23 Stat. 24, be regarded as *organizing* a Territory there, it would follow that such Territory at once fell within Rev. Stat. sec. 1891, and the Constitution was extended to it without further action. The first article declares that Alaska "shall constitute a civil and judicial district, the

government of which shall be organized and administered as hereinafter provided." Had the opinion treated the Territory as organized under this act, I should not have dissented from this view, since section 1891 would have applied to it.

Congress did undoubtedly provide a permanent civil government for Alaska by the act of June 6, 1900, 31 Stat. 321, but it evidently did not regard the Constitution as extended to it by any previous act, since it provided in section 171 for trials of misdemeanors by a jury of six.

There are so many difficulties connected with the applicability of the Constitution that it has seemed to me that the only true test was whether Congress intended to apply it or not in the particular case. When is a Territory incorporated so as to make the Constitution applicable in all its provisions? That some action on the part of Congress is necessary to extend the Constitution to the Territories was settled in *Downes* ·v. *Bidwell*, but shall such action be direct or may it be indirect by way of incorporation? May Congress, in organizing or incorporating a Territory, restrict the application of the Constitution to it, or must it give it all? What is an organized as distinguished from an incorporated Territory? Does not the acceptance of a cession of territory and the appointment of a civil governor work an incorporation of the territory as territory of the United States? If the acceptance of territory as territory of the United States be not an incorporation, what language is necessary to effect that result? Apparently, acceptance of the territory is insufficient in the opinion of the court in this case, since the result that Alaska is incorporated into the United States is reached, not through the treaty with Russia, or through the establishment of a civil government there, but from the act of July 20, 1868, concerning internal revenue taxation, and the act of July 27, 1868, extending the laws of the United States relating to the customs, commerce and navigation over Alaska and establishing a collection district there. Certain other acts are cited, notably the judiciary act of March 3, 1891, making it the duty of this court to assign

the several Territories of the United States to particular circuits. But no mention is made either of the act of May 17, 1884, providing a civil government for Alaska or the act of June 6, 1900, making further provision for a civil government and establishing a complete code of laws. These seem to me the vital acts upon the *status* of Alaska; yet they are completely ignored in the opinion of the court, and the fact of incorporation is sought to be established by what seem to me remote inferences from immaterial statutes. Indeed I regard the whole theory of the extension of the Constitution by the incorporation of territory as a new departure in Federal jurisprudence, and that the true answer to the question whether the Constitution applies to a Territory is to be found in the fact whether Congress has extended the Constitution to it or not.

That the mere act of incorporating territory into the United States does not of its own force carry the Constitution there, regardless of the wishes of Congress, is evident from the case of *Hawaii* v. *Mankichi*, 190 U. S. 197, wherein it was held that, notwithstanding the island had been annexed to the United States "as a part of the territory of the United States, and subject to the sovereign dominion thereof," yet it was possible for Congress to declare that "the municipal legislation of the Hawaiian Islands not enacted for the fulfillment of the treaties so extinguished, and not inconsistent with this joint resolution, nor contrary to the Constitution of the United States nor to any existing treaty of the United States, shall remain in force until the Congress of the United States shall otherwise determine."

While the government provided by this resolution was temporary in its character, and a mere continuance of existing laws, the act itself was as complete an incorporation of the islands as it was possible for language to make it. The resolution declared that "said cession" of the Republic of Hawaii "is accepted, ratified and confirmed, and that the said Hawaiian Islands and their dependencies be, and they are hereby, annexed as a part of the territory of the United States, and are

subject to the sovereign dominion thereof." In view of this language I do not see how it is possible to escape the conclusion that there was a plain incorporation by Congress of these islands and an extension of sovereignty over them. Notwithstanding this, however, we held that the conviction of one, who between the date of the Newlands resolution and the date of establishing a civil government, had been tried on information and convicted by a non-unanimous jury, was legal, though not in compliance with the Fifth and Sixth Amendments to · the Constitution, upon the ground that the Constitution was not formally extended to them until the Territory was organized, June 14, 1900. 31 Stat. 141, sec. 5. This case shows the impossibility of applying the doctrine of incorporation without an accurate definition of the term. Hitherto we have been content to divide our Territories into the organized and unorganized; but now we are asked to introduce a new classification of "incorporated" Territories without attempting to define what shall be deemed an incorporation. The word appears to me simply to introduce a new element of confusion and to be of no practical value. Rev. Stat. sec. 1891, declaring that the Constitution shall have force and effect within all the organized Territories and in every Territory hereafter organized, seems to meet the requirements of every case, and to be operative wherever Congress does not in the organization restrict the application of the Constitution in some particular.

In *Dorr* v. *United States,* 195 U. S. 138, the question was presented, as stated by Mr. Justice Day, whether, "in the absence of a statute of Congress, expressly conferring the right, trial by jury is a necessary incident of judicial procedure in the Philippine Islands, where demand for trial by that method has been made by the accused and denied by the courts established in the islands." In discussing the case it was said that not only has Congress hitherto refrained from incorporating the Philippine Islands into the United States, but in the act of 1902, providing for temporary civil government, 32 Stat. 691, there was an express provision that Rev. Stat. sec. 1891

should not apply to the Philippine Islands. This is the section giving force and effect to the Constitution of the United States, not locally inapplicable, within the organized Territories. The case simply holds that as Congress did not extend the right of trial by jury to the Philippine Islands, and had not so incorporated them as to make the provision apply by implication, the right did not exist. The cases of *Steamer Coquitlam,* 163 U. S. 346, and *Binns* v. *United States,* 194 U. S. 486, are too obviously inapplicable to require comment.

I do not dissent from the conclusion of the court in this case, but I do dissent from the proposition that Congress may not deal with Territories as it pleases, until it has seen fit to extend the provisions of the Constitution to them, which, once done, in my view, is irrevocable. I regret that the disputed doctrine of incorporation should have been made the mainstay of the opinion of the court, when the case might so easily have been disposed of upon grounds which would have evoked no utterance of disapproval.