**Jeanne H. RAYPHAND and Stanley T. Torres, Plaintiffs,**

v.

**Miguel M. SABLAN, Vicente N. Atalig, George O. Hocog, Maria B. Diaz, Vicente H. Borja, Frances M. Sablan, Ramon A. Tebuteb and Connie Seman– Camacho, Members, Board of Elections, and Juan M. Diaz, Executive, Board of Elections (in their official capacities only), Defendants,**

**United States of America, Commonwealth of the Northern Mariana Islands, Mayor of Rota, Mayor of Tinian, and Eleventh Northern Marianas Commonwealth Legislature, Intervenors.**

**No. Civ.A. 97–0029.**

United States District Court, Northern Mariana Islands.

May 5, 1999.

Theodore R. Mitchell, Saipan, MP, for plaintiffs.

Robert Goldberg, Commonwealth Assistant Attorney General, Saipan, MP, for All Named defendants and intervenor Commonwealth.

Lucinda A. Love, Federal Programs Branch, Civil Division, United States Department of Justice, Washington, DC, Gregory Baka, Assistant United States Attorney, District of the Northern Mariana Islands, for intervenor United States.

Thomas G. Bruce, Rota, MP, for intervenor Mayor of Rota.

Loren A. Sutton, Tinian, MP, for intervenor Mayor of Tinian.

Stephen C. Woodruff, Saipan, MP, for Commonwealth Legislature.

BEFORE: WALLACE,* Senior Circuit Judge; UNPINGCO,** District Judge; and, MUNSON, District Judge.

ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT; and, DENYING AS MOOT THE MOTION FOR JUDGMENT ON THE PLEADINGS

MUNSON, District Judge.

THIS MATTER came before the Court on Friday, October 23, 1998, for hearing of Intervenor Eleventh Northern Marianas Commonwealth Legislature's Motion for Judgment on the Pleadings and Plaintiffs'[1] and Defendants' cross-motions for summary judgment.[2]

Upon consideration of briefs submitted and oral argument, the Court rules as follows: Plaintiffs' Motion for Summary Judgment is DENIED; Defendants' Motion for Summary Judgment is GRANTED; and, Intervenor Eleventh Northern Marianas Commonwealth Legislature's Motion for Judgment on the Pleadings is DENIED as moot.

### Factual Background

In 1976, the Northern Mariana Islands entered into political union with the United States. Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America, Act of Mar. 24, 1976, Pub.L. No. 94–241, 90 Stat. 263 (codified as amended at 48 U.S.C. § 1801 (1998)) (hereinafter "Covenant").

The Covenant was approved unanimously by the Mariana Islands District Legislature, by an overwhelming majority vote of the people of the Northern Mariana Islands, and by a joint resolution of the United States Congress. It consists of ten articles setting forth the agreement governing the relationship between the Commonwealth of the Northern Mariana Islands (hereinafter "CNMI") and the United States as its sovereign. *Id.* Article II, § 201 of the Covenant calls for the people of the CNMI to establish and approve a Constitution, and § 203 provides for a republican form of government. Section 203(c) specifies that the legislative power "will be vested in a popularly elected legislature and will extend to all rightful subjects of legislation." Covenant, art. II, § 203(c). Section 203(c) further states:

> The Constitution of the Northern Mariana Islands will provide for equal representation for each of the chartered municipalities of the Northern Mariana Islands in one house of a bicameral legislature, notwithstanding other provisions of this Covenant or those provisions of the Constitution or laws of the United States applicable to the Northern Mariana Islands.

In accordance with Covenant § 203(c), the CNMI Constitution provides for a bicameral legislature, composed of a Senate and House of Representatives. N.Mar.I. Const. art. II, §§ 2 and 3. While the composition of the House of Representatives is determined according to the population of the various islands in the Commonwealth, the Senate is composed of "nine members with three members elected at large from each of three senatorial districts." *Id.* § 2(a). Pursuant to Article

---

* The Honorable J. Clifford Wallace, Senior Circuit Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

** The Honorable John S. Unpingco, Chief District Judge, District Court of Guam, sitting by designation.

1. At the beginning of this action, Jeanne H. Rayphand was the only named Plaintiff; Stanley Tu. Torres was added on November 28, 1997.

2. Intervenor United States moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment. Intervenors the Mayors of Rota and Tinian moved for summary judgment and joined in Defendants' motion. These motions advanced substantially the same positions as Defendants' Motion for Summary Judgment.

II, section two of the CNMI Constitution, the first district consists of the island of Rota, the second of the islands of Tinian and Aguigan, and the third of the island of Saipan and the islands lying north of Saipan. Saipan, Tinian, and Rota are the only islands with significant populations and Saipan's population is between fifteen and twenty times greater than either Tinian's or Rota's. Thus, Rota and Tinian (three senators each) have approximately ten percent of the total CNMI population, while only three Senators represent Saipan, which has approximately ninety percent of the population. *See* U.S. Dept. of Commerce, 1990 Census of Population and Housing; Social, Economic and Housing Characteristics, CNMI (Mar.1992), filed at p. 3 of Pls.' Ex. in Supp. of Mot. for Summ.J. (Aug. 1, 1997).[3] All parties agree that the CNMI Senate is malapportioned.

Plaintiffs challenge § 203(c), asserting that it violates the Equal Protection Clause of the United States Constitution by failing to meet the "one person, one vote" constitutional standard definitively stated in *Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964).

### Procedural Background

On July 8, 1997, Plaintiffs filed a Complaint for Declaratory and Injunctive Relief against the Governor,[4] the CNMI Board of Elections (hereinafter "BOE"), and Tenth Commonwealth Legislature (hereinafter "Legislature"). The Complaint asserted that the composition of the CNMI Senate violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution because of the great disparity in the populations of the three CNMI senatorial districts. (Compl. for Decl. and Inj. Relief, ¶ 1.) This disparity allegedly violates 42 U.S.C. § 1983 and plaintiffs sought an injunction

compelling the Governor and the CNMI Legislature to redistrict the Senate into "nine election districts of substantially equal population for the election of the nine senators," (*id.* ¶ 3), and an order of the Court directing that a special election be held for membership in the newly-reapportioned Senate.[5]

After dismissal of the first complaint, the filing of an amended complaint, and many intervening motions which need not be revisited here, Plaintiffs moved for summary judgment. The United States intervened as of right pursuant to 28 U.S.C. § 2403(a). In addition, the CNMI, the Legislature, the Mayor of Rota, and the Mayor of Tinian moved to intervene, which motions the Court granted on May 8, 1998. Thereafter, Defendants moved for summary judgment, the United States moved to dismiss or, alternatively, for summary judgment, the Mayors of Rota and Tinian each moved for summary judgment, and, the Legislature moved for judgment on the pleadings.

On Friday, October 23, 1998, the Court heard oral argument on these motions, and now rules as follows:

### The Constitutionality of the Malapportioned Senate

Plaintiffs assert that they are entitled to a judgment as a matter of law declaring that the composition of the CNMI Senate—which gives three senators each to the islands of Saipan, Rota and Tinian—violates the Fourteenth Amendment right of every citizen of Saipan to the equal protection of the law because the large disparity between the population of Saipan, on the one hand, and the populations of Rota and Tinian on the other, greatly dilutes the voting power of Saipan voters. Plaintiffs seek a declaration to that effect

---

3. The 1990 census reported the population of Saipan and the northern islands to be 38,932, Tinian and Aguigan to be 2,118, and Rota to be 2,295. *Id.*

4. The Complaint named the then current Governor, Froilan C. Tenorio.

5. Also, on August 15, 1997, Plaintiffs requested the convocation of a three-judge court pursuant to 28 U.S.C. § 2284. That motion is the subject of a separate order.

and an injunction directing the BOE to conduct a special election to elect a new Senate which is apportioned according to the population distribution of the CNMI.

Conversely, Defendants and Intervenor CNMI move for summary judgment on the grounds that (1) every court in the CNMI has previously rejected this "Covenant challenge;" [6] (2) equal representation in the Senate was an essential "compromise and concession" in the formation of the Commonwealth; (3) the Covenant case law supports a finding that unequal representation in the CNMI Senate is constitutional; and (4) and adverse ruling would be catastrophic to the future of the Commonwealth. Intervenors Mayor of Tinian and Mayor of Rota join in the motion. Intervenor United States moves for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) or, alternatively, for summary judgment on the basis that the composition of the CNMI Senate does not violate the equal protection guarantee of the Fourteenth Amendment because the "one person, one vote" standard is not a fundamental right within unincorporated territories under the Insular Cases Doctrine and Ninth Circuit law.

**6.** The Court declines to address again Defendants' recurrent argument that this court must either give *stare decisis* effect to, or decline to re-visit for prudential reasons, a previous decision of this court in *Hillblom v. United States,* 3 N.Mar.Commonw.Rptr. 294 (D.N.Mar.I.1988) (Laureta, C.J.)

Defendants also urge the Court to reject Plaintiffs' "Covenant challenge" because they contend that the CNMI Superior and Supreme Courts have previously rejected the identical challenge to Covenant § 203(c) in *Sablan v. Tenorio,* Civ.Act. No. 94–500 (N.Mar.Commonw.Super.Ct. July 18, 1994), at 19–30, *affirmed,* Appeal No. 94–034 (N.M.I. Apr. 18, 1996). This Court disapproved the same argument when advanced by the Legislature in an earlier motion to dismiss, (*See* Order Den. Def. Legislature's Mot. to Dismiss, Oct. 20, 1997.), and does so again today.

**7.** *See e.g.* Marianas Political Status Commission, "Section–by–Section Analysis of the Covenant to Establish a Commonwealth of the Northern Mariana Islands (1975)", *reprinted in Hearing to Approve The Covenant to*

We conclude that the argument advanced by Intervenor United States is legally correct for the following reasons.

Defendants and Intervenors concede that the Senate, as currently composed, is malapportioned. With that in mind, the issue we must confront may be fairly stated as follows:

Did the United States Congress have the power to concede to the demand in 1975 of the negotiators for the Northern Mariana Islands, which islands were not at that time a United States territory or possession, that the fundamental United States constitutional guarantee of "one person, one vote" would not apply with regard to the composition of the Northern Mariana Islands Senate, when as a result of the negotiations the NMI became a commonwealth in political union with, and under the sovereignty of, the United States, and whose people became full United States citizens in 1986?

Defendants first contend that without the express condition of equal representation in the Senate, the islands of Rota and Tinian would not have agreed to join the union with Saipan.[7] Thus, argue Defen-

*Establish a Commonwealth of the Northern Mariana Islands: Hearings on H.R.J.Res. 549 Before the Sub-comm. on Territorial and Insular Affairs of the House Comm. on Interior and Insular Affairs,* 94th Cong., 1st Sess. 626–65 (1975) ("The establishment of the commonwealth involves compromises and concessions which reflect the different historical and geographic interests of the major islands in the Northern Mariana group, as well as population. *** The Commission concluded that, in light of the past experience of the people of Rota and Tinian and the need for their support of the Covenant, the protection afforded them by Section 203(c) was entirely appropriate and desirable.") and in *Northern Mariana Islands: Hearing Before the Senate Comm. on Interior and Insular Affairs,* 94th Cong., 1st Sess. 356–496 (1975); Senate Comm. on Interior and Insular Affairs, Section–by–Section Analysis of the Covenant, S.Rep. No. 433, 94th Cong., 1st Sess. pp. 65–94 (1975) ("This provision was inserted at the insistence of the chartered municipalities of Rota and Tinian with the unanimous support of the Marianas Political Status Commission.").

dants, the CNMI's population-based lower house and geography-based upper house is exactly analogous to the United States Congress and should therefore survive constitutional scrutiny under *Reynolds v. Sims*, 377 U.S. 533, 574, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), as did the federal bicameral legislature.

We need not discuss this issue, because resort to the federal analogy may be misleading when discussing the Commonwealth, which exists "under the sovereignty of the United States of America," Covenant § 101, and because we dispose of this case on other grounds. Because there is no question that the CNMI Senate is malapportioned, the question before us is whether this arrangement is constitutional in the Commonwealth in the face of the "one man, one vote" requirement imposed on the states by *Reynolds v. Sims*. Our answer is compelled by two previous decisions involving the Covenant: *Commonwealth of the Northern Mariana Islands v. Atalig*, 723 F.2d 682 (9th Cir.), cert. denied, 467 U.S. 1244, 104 S.Ct. 3518, 82 L.Ed.2d 826 (1984), and *Wabol v. Villacrusis*, 958 F.2d 1450 (9th Cir.1990).

■ In *Commonwealth of Northern Mariana Islands v. Atalig*, the defendant had been convicted in a CNMI trial court of possession of marijuana in violation of a local statute. 723 F.2d 682, 684. Because CNMI law only provides the right to a jury in a criminal case for offenses punishable by more than five years imprisonment or a $2,000 fine, *see* 5 Trust Territory Code § 501(1) (now codified as 7 N.Mar. I.Code § 3101), and because Atalig's charge only involved a maximum penalty of one year in prison, a $1000 fine, or both, Atalig did not receive a jury trial. *Id.* The Appellate Division of the District Court for the Northern Mariana Islands, which at that time served as the intermediate court of appeal between the then Commonwealth Trial Court and the U.S. Court of Appeals for the Ninth Circuit, reversed the conviction, holding that Atalig was denied his right to trial by jury as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. *Id.* The court also held that Covenant § 501[8] and the local statutory provision limiting the right to a criminal jury trial were unconstitutional to the extent they denied the right to a jury trial. *Id.* The Ninth Circuit, faced with the issue of whether the limitation on trial by jury violated the Constitution notwithstanding the Covenant, reversed the Appellate Division, based upon the holdings of the *Insular Cases*.[9] *Id.* at

8. Covenant section 501 provides in relevant part:
   To the extent that they are not applicable of their own force, the following provisions of the Constitution of the United States will be applicable within the Northern Mariana Islands as if the Northern Mariana Islands were one of the several states ... Amendments 1 through 9, inclusive; ... Amendment 14, Section 1; ... provided, however, that neither trial by jury nor indictment by grand jury shall be required in any civil action or criminal prosecution based on local law, except where required by local law.
   Covenant, § 501(a). Section 501(b) authorizes Congress to approve section 501(a).

9. The *Insular Cases* are a line of Supreme Court decisions concerning the doctrine of territorial incorporation. They are generally deemed to include *Balzac v. Porto Rico*, 258 U.S. 298, 42 S.Ct. 343, 66 L.Ed. 627 (1922) (constitutional right to jury trial does not ap-

ply to territories not incorporated into the United States; neither Puerto Rico Organic Act not organization of United States District Court served to incorporate Puerto Rico into United States); *Rassmussen v. United States*, 197 U.S. 516, 25 S.Ct. 514, 49 L.Ed. 862 (1905) (Alaska so incorporated into United States by the treaty under which it was acquired, and by subsequent federal legislation made applicable to Alaska, that 6th Amendment right to jury trial applied to territory); *Dorr v. United States*, 195 U.S. 138, 24 S.Ct. 808, 49 L.Ed. 128 (1904) (the right to jury trial was not extended by the Federal Constitution, without legislation, and of its own force, to the Philippines, because they were not incorporated by congressional action); *Territory of Hawaii v. Mankichi*, 190 U.S. 197, 23 S.Ct. 787, 47 L.Ed. 1016 (1903) (constitutional right to grand and petit juries not extended to Hawaiian Islands by their annexation); *Downes v. Bidwell*, 182 U.S. 244, 21 S.Ct. 770, 45 L.Ed. 1088 (1901) (revenue

688–690. The *Insular Cases* held, among other things, that the right to a jury trial as guaranteed by the Sixth Amendment and the right to grand jury indictment as guaranteed by the Fifth Amendment to the United States Constitution are not "fundamental rights," and they do not apply automatically in unincorporated territories.[10] *Id.* at 688. The *Atalig* court found that the Appellate Division had incorrectly relied upon *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), which held that the right to a criminal jury trial in state prosecutions for serious criminal offenses is a fundamental right incorporated by the Fourteenth Amendment Due Process Clause. *Id.* at 689. The court stated that the Appellate Division had assumed that this "fundamental right" applied in unincorporated territories, but that *Duncan* could be read only as adopting a new definition of fundamental rights for the purpose of applying the Bill of Rights to the states. *Id.* The court further explained that the purpose of the doctrine of territorial incorporation is "to limit the power of Congress to administer territories under Article IV of the Constitution." *Id.* The court then turned to the method of identifying "fundamental rights" for purposes of territorial incorporation as set forth in the *Insular Cases* and instructed courts grappling with the issue to consider "whether the asserted right was one of 'those fundamental limitations in favor of personal rights' which are 'the basis of all free government.'" *Id.* at 690 (quoting *Dorr v. United States*, 195 U.S. 138, 146–147, 24 S.Ct. 808, 49 L.Ed. 128 (1904)). The court explained that, by this method, Congress was given the most flexibility in fulfilling its mandate under the Territorial Clause, and the imposition of unfamiliar and possibly unwanted rules on territorial cultures would be avoided. *Id.* The court concluded that Covenant § 501 and the local law limitation on right to a criminal jury trial were not unconstitutional. *Id.*

*Wabol* involved an equal protection challenge to the land alienation restriction contained in Article XII of the CNMI Constitution, which implements Covenant § 805. Section 805 allows the CNMI to regulate the alienation of permanent and long-term interests in real property (now defined as interests in excess of 55 years) so as to restrict the acquisition of such interests to persons of Northern Mariana Islands descent. The court held that Article XII was not susceptible to an equal protection attack because the right of access to long-term interests in NMI land, resident in the equal protection clause, is not a "fundamental right in the international sense," i.e., rights that are "the basis of all free government." *Wabol*, 958 F.2d at 1460. Therefore, the right did not apply *ex proprio vigore* to the CNMI.[11] *Wabol*, 958

clauses of the Constitution are inapplicable to Puerto Rico); *Armstrong v. United States*, 182 U.S. 243, 21 S.Ct. 827, 45 L.Ed. 1086 (1901); *Dooley v. United States*, 182 U.S. 222, 21 S.Ct. 762, 45 L.Ed. 1074 (1901) (goods imported into Puerto Rico from United States after cession of Puerto Rico by United States are not subject to duties because, after cession, Puerto Rico no longer a foreign county); *De-Lima v. Bidwell*, 182 U.S. 1, 21 S.Ct. 743, 45 L.Ed. 1041 (1901) (Puerto Rico is not a foreign country and import duties levied on sugar were illegal).

**10.** It is undisputed that the CNMI is not an incorporated territory, although its exact status is far from clear. *Wabol v. Villacrusis*, 958 F.2d at 1460 n. 18; *Atalig*, 723 F.2d at 691 and n. 28.

**11.** While *Wabol* also stated that the court should consider whether the application of the right in the territorial context would be "impractical or anomalous," 958 F.2d at 1461, the vitality of that test is in doubt. This language came to *Wabol* from a concurring opinion of Justice Harlan in *Reid v. Covert*, 354 U.S. 1, 17, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957), via the District of Columbia Circuit decision in *King v. Morton*, 520 F.2d 1140, 1147 (D.C.Cir.1975). *Wabol*, 958 F.2d at 1461. In *United States v. Verdugo–Urquidez*, 494 U.S. 259, 110 S.Ct. 1056, 108 L.Ed.2d 222 (1990), however, the Court stated the central holding of the *Insular Cases* as, "Only 'fundamental' constitutional rights are guaranteed to inhabitants of [unincorporated] territories." *Id.* at 268, 110 S.Ct. 1056. Only Justice Kennedy, in a concurring opinion, cited the "impractical or anomalous" test. *Id.*

F.2d at 1462. Thus, the Ninth Circuit concluded that Congress had acted within its power in enacting sections 501(b) and 805 of the Covenant.[12] *Id.*

■ With the foregoing precedents in mind, we turn to the issue before the Court did Congress exceed its authority under the Territorial Clause[13] by insulating section 203(c) from the reach of the Equal Protection Clause? We conclude that Congress' endorsement of the NMI negotiators' request that the voters of Saipan be denied the fundamental United States constitutional guarantee of "one person-one vote" in regards to the composition of the CNMI Senate does not offend the United States Constitution.

As mentioned above, the *Insular Cases* have long provided the legal framework

and justification for allowing otherwise unconstitutional practices to continue in United States territories.[14] The primary legal doctrine arising from those cases is that the extent to which a territory's inhabitants are entitled to the protections afforded by the U.S. Constitution is dependent upon the degree to which the territory has been "incorporated" into the United States.[15] Despite the fact that the Commonwealth exists "in political union with and under the sovereignty of the United States," Covenant § 101, it has never been "incorporated" into the United States, even though § 101 is a fundamental aspect of the relationship that cannot be changed without the consent of both parties. Covenant § 105.

Given that the CNMI is not an incorporated territory, *Atalig* and *Wabol* require

at 278, 110 S.Ct. 1056. Given this, we focus on the central test of *Atalig, Wabol*, and the *Insular Cases*, which is whether the given right is "the basis of all free government."

12. Section 501(b) of the Covenant provides "the applicability of certain provisions of the Constitution of the United States to the Northern Mariana Islands will be without prejudice to the validity of and the power of the Congress of the United States to consent to Sections 203, 506 and 805...."

13. The Territorial Clause of the United States Constitution provides that "Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States." U.S. Const. art. IV, § 3, cl. 2.

14. Their vitality is but little diminished almost a century later. *See, e.g. United States v. Verdugo–Urquidez,* 494 U.S. 259, 268, 110 S.Ct. 1056, 108 L.Ed.2d 222 (1990) (stating that the *Insular Cases* hold that not every constitutional provision applies to governmental activity even where the United States has sovereign power).

15. The doctrine of incorporated and unincorporated Territories was created in the *Insular Cases*. In the former category were those Territories destined for statehood from the time of their acquisition, and the Constitution was applied to them with full force. In the latter category were those Territories with no anticipation of statehood. As to them, only

"fundamental" constitutional rights were guaranteed the inhabitants. *See* James A. Branch, Jr., *The Constitution of the Northern Mariana Islands: Does a Different Cultural Setting Justify Different Constitutional Standards?,* 9 Denv.J. Int'l L. & Pol'y 35, 41–46 (1980).

> The immediate issue in *Downes* was whether Congress could impose a tariff on goods imported from Puerto Rico despite the constitutional requirement that all duties be uniform throughout the United States. The Court held that Puerto Rico was not in the full sense 'domestic territory' and that the tariff was valid. The supporting reasoning was supplied in a concurring opinion by Justice White. White (sic) distinguished between 'incorporated' and 'unincorporated' territories. A territory could become incorporated only through the express or implied consent of Congress. Once incorporated, the Constitution fully applied to it. However, in unincorporated territories only certain fundamental provisions of the Constitution applied, such as the prohibitions in favor of the liberty and property of the citizen. But constitutional restrictions that only relate to the 'form and manner' of exercising power, such as the imposition of tariffs, do not apply. Congress may exercise its discretion in such matters, regardless of the language of the Constitution. Paul M. Leary, *The Northern Marianas Covenant and American Territorial Relations,* Inst. of Governmental Studies, Research Report 80–1, Univ. of Cal. Berkeley (1980).

us to determine whether the "one man, one vote" requirement applicable to the states by *Reynolds* is right that is "the basis of all free government." It is apparent that it is not. Several countries that are considered to have "free government" have a bicameral legislative in which one house is malapportioned. Amongst these is the United States. Since it is clear that the "one man, one vote" principle is not a right that is the "basis of all free government," it need not be applied in and to an unincorporated territory such as the Commonwealth. Therefore, we conclude that Congress was exercising valid and lawful authority when it agreed to the NMI negotiators' demand that § 203(c) be included in the Covenant and that the voters of Saipan be denied the guarantee, which would be deemed fundamental under the United States Constitution when applied to a state, of "one person, one vote." Covenant § 203(c) is not unconstitutional. Accordingly, Defendants' motion for summary judgment is GRANTED and Plaintiffs' motion for summary judgment is DENIED. Additionally, because this ruling is dispositive of the case, the Court DENIES as moot Intervenor Legislature's Motion for Judgment on the Pleadings.

IT IS SO ORDERED.