Daniel, Judge.
 

 The third reason for a new trial, is, that that the judge expressed his opinion to the jury on the facts of the case, or gave them so strong an intimation of it, that it was impossible for them to mistake it. On this point, the judge states in the case, that he was unconscious of having said any thing in his charge which invaded the exclusive right of the jury to determine the facts. No particular expressions of this opinion by the judge, were pointed out by the counsel in the court below, and inserted in the draft of the reasons for a new trial, and thereby to get them incorporated in the case, or have a statement by the judge of what he did say to the jury. J cannot therefore, discover that he did
 
 *489
 
 express bis opinion to the jury on the facts of the case, and, on this ground, the motion must be overruled.
 

 Tlie fourth reason is, that the judge iu reciting and commenting on the testimony, dwelt at length, and directed the attention of the jury particularly to those parts of it which operated against the prisoner, and omitted to recapitulate or comment on those operating in his favour, The case states, that
 
 “
 
 the presiding judge did not recapitulate all, or near all, that was said by the witnesses on either side, but selected from the mass of testimony such parts as occurred to him to be important to a just determination of the cause, and did not refuse to mention any thing which was suggested
 
 by
 
 the prisoner’s counsel, as important; but did mention several facts, and comment on them, at the suggestion of the prisoner’s counsel.” The act of 1796,
 
 (Rev. ch.
 
 452,) forbids a judge giving, in his charge to a petty jury, an opinion whether a fact is fully or sufficiently proved. But it declares it to be his duty to state in a full and correct manner, the facts gi ven in evidence, and to declare and explain the law arising thereon. In the case of
 
 The State
 
 v.
 
 Morris,
 
 it was determined that a judge is not hound to notice the facts at all, but if he states any part of them, it becomes his duty to state the whole
 
 evidence;
 
 not in
 
 lime verba,
 
 but as substantially as his recollection of them, aided by his notes, will enable him. The judge in the present case says,
 
 “
 
 he selected from the mass of testimony, such parts as appeared to him important, to a just determination of the cause.” If the residue of the evidence was material to the issue, (if not material, it should not have been admitted,) ho was bound by the enactment of the legislature, to state in a full and correct manner the whole of it, otherwise wjjat he did state might have a tendency to obliterate from the minds of the jury, what was omitted, or leave an impression upon them, that in his opinion, the evidence not recapitulated, was worth nothing and did not deserve consideration. I think the judge erred in not stating the evidence fully; and therefore, for this reason, a new trial should be granted.
 

 The fifth reason for a new trial, is, that the judge
 
 *490
 
 erred in instructing the jury, that the character of the accused was only to be considered by them, where there was a doubt of the fact of killing, and was entitled to but little weight where the fact was positively sworn to. The case states “ the jury were instructed, that the character of the accused was only to be considered by them where his guilt was doubtful, and was entitled to but little weight where facts were positively sworn to again the case states, ‘s that if the principal witness for the state, together with others, was believed, it was a case of murder; and- if the statement of some other witnesses was believed, it was a case of manslaughter; and the jury were distinctly informed, that in this conflict of testimony, they must determine what they believed to be the real facts of the case ; many witnesses were offered on both sides, none of whom were impeached as witnesses unworthy, from their characters, of credit.” “It was in proof by all the witnesses who spoke of the fact, and they were many, that the prisoner’s demeanor had hitherto, through life, been periectly'paciiic.” In criminal prosecutions, the prisoner is always permitted to call witnesses to speak of his general character, for it is general character alone, that can afford any test of good conduct, or raise a presumption that one, who had maintained a fair reputation down to a certain period, would not then begin to act an unworthy part, (2
 
 Bussell
 
 703, I
 
 McNally
 
 322.) If the judge, in his remarks relative to character, meant to apply them to a hypothetical case, or to state an abstract proposition, then he was right, for when the charge in the indictment is positively proven by credible v itnesses, the general good character of the prisoner will have no weight in his favor — he must be convicted. But it appears, there were a class of witnesses in this case, who deposed to facts, which if found by a special verdict, would have authorised the court to pronounce the homicide to be a case of murder, and another class, who deposed to facts, which if thus found, would only have authorised the court to adjudge the prisoner guilty of manslaughter. In this conflict of testimony, the general good, or peaceable
 
 *491
 
 character of the prisoner, would be a powerful auxiliary to support the latter class, by making out the proof of a provocation, to reduce the case to manslaughter. If, in a case of this kind, the judge was to tell the jury, that tiie general good character of the prisoner was entitled to but little weight where the facts were positively sworn to by the witnesses for the state, such a charge would not only be erroneous in point of law, hut would he expressing an opinion as to the force and.effect such a circumstance^ should have on the minds of those who were solely entrusted with the power of weighing the evidence, and judging whether it proved the' fact of provocation, so as to reduce the homicide to a case of manslaughter. If I was to take, the case from the reasons assigned by the counsel of the prisoner, it would be clear the judge erred 5 but I am to look at the case made up by the court, and in that I am not so well enabled to learn, how and to what the expressions, excepted to by the prisoner, were applied. They were words of supererogation, or they must be a part of the charge, relating to the evidence which bore upon the question of provocation, for that the deadly blow was given by the prisoner, was not disputed. The general good, or pacific character of the prisoner, was proper evidence to be loft to the jury, and connected with the other evidence, was proper to enable them to ascertain the
 
 quo animo
 
 with which the act was perpetrated. S am left so much in doubt, by the case sent here, whether this portion of the charge related to the fact of killing, or to the quest!on whether there was such a provocation given by the deceased as reduced the homicide to manslaughter, that I think it best a new trial should be granted.
 

 Henderson, Chief-Justice.
 

 I shall confine myself to what is called the fifth point on the motion for a new trial, which I shall take from the judge’s response to the motion, and not from the allegation of the counsel. The judge asserts, that the jury were instructed,
 
 “
 
 that the character of the accused was only to be considered where his guilt was doubtful, and was
 
 entitled to but little weight
 
 
 *492
 

 where the, facts were positively sworn to.”
 
 Although I am opposed to prescribing rules of faith for the opinions of others, as we know so little of the ground on which our own are formed, tiiat had this been a civil case, I do not know that I should disturb the verdict, as, without a very strained construction, the judge may be understood to have added the latter words, as illustrative of the former part of his charge, and it was so understood by the jury: Yet in a capital case, I cannot act upon bare probabilities, but must give to the words their
 
 most
 
 natural import, and view the latter part, to-wit, the following words: “and was entitled to but little weight where the facts were positively sworn to,” as a distinct substantive instruction, which from its phraseology it purports to be. If the j udge means by the words
 
 positively sworn to,
 
 clearly and satisfactorily established ■ — lie may be right, for character is thrown into the scale as presumptive evidence only, and if the opposing proofs are strong and clear, carrying conviction with them, in such case, it is quite evident
 
 that
 
 presumptions can make but little impression. But if he meant, as the words import, that the presumption arising from the character can have but little weight where the facts are positively sworn to
 
 only,
 
 or
 
 because
 
 the facts are positively sworn to, I think he erred, for the facts may be positively sworn and yet not afford such clear and satisfactory evidence of their existence, as not to be shaken by presumptive evidence. This may arise from a variety of causes. The character of the deposing witnesses — their means of knowledge — the manner in which they gave in their evidence — the very nature of the fact deposed to — the negative or positive evidence of opposing witnesses to the same or some other transaction referred to, conflicting with it. And indeed a great variety of causes may concur to shake the belief of juries in a fact positively sworn to, by one or many witnesses. Yet these of themselves may not be sufficient to overthrow the proofs. The weight of positive testimony yet inclines the scale against the prisoner, or to speak more properly, as character is admissible in criminal cases only, the weights in the
 
 *493
 
 opposite scale ace not sufficient to raise it from the ground, the character is then thrown into that scale, a rational doubt is raised, and the prisoner therefrom claims an acquittal. Let it not be said that this is an unnatural or an overdrawn picture. The original is of frequent occurrence, ant! I think I can perceive this case to be of that description. The judge in his statement says there was conflicting testimony: on the one side,' the testimony of what lie calls the main witness and. others, made the homicide to be a case of murder, and some witnesses for the defendant, rendered it manslaughter. The peaceable and orderly character, which it was shown the prisoner had ever borne, had, I think, more “
 
 than but little
 
 •weight,” particularly as to the provocation, and the circumstances under which the mortal blow Was given, for I presume that was the point on which the witnesses differed. Such a character, must have considerable influence where there was a doubt whether the blow was given upon little or no provocation, or whether the provocation was great.
 

 Tiie case of tIie v
 
 Mernl,
 
 ggg^ by Henmusonj
 

 These wore my views in the case of the
 
 State
 
 v.
 
 Merril, (ante
 
 2
 
 vol. p.
 
 269,) in which I delivered no opinion, but concurred with Judge II Aim, in reversing the judgment. In that case, the prisoner’s bad character ought not to have prejudiced him, as
 
 he
 
 did not offer his character in evidence, and it was
 
 his
 
 right to offer it or not. Who can say that it did not affect the verdict, that it did not make out a case otherwise defective, on the part of the state, or that the state offered it at least as a make weight. Could we, who are not permitted to weigh the evidence, say there was sufficient without it? The evidence which convinces the understanding, is composed of particles too minute, too subtle and too fluid, to be either counted weighed or measured ; we have no weights or measures of it even for ourselves, much less have we weights and measures to mete it out to others. The only rule is the
 
 quantum sitffidt
 
 to the understanding of him who is to decide. I then thought, and still think, it was the prisoner’s right, (unless he waived it,)
 
 to stand before his
 
 
 *494
 

 jury as an ordinary
 
 man, neither
 
 above
 
 nor
 
 below
 
 the common level, and he should not, but by his own consent, be placed otherwise; and that the jury only, (and perhaps not even they,) could say how much each particle of evidence operated, and affirm that the verdict was unaffected by the bad character of the defendant, improperly given in evidence by the state.
 

 On the other parts of the charge, I concur with Judge Rueein, and for the very satisfactory reasons given by him. I think that the judgment should be reversed, and a new trial granted.