## MARY JOSEPHINE HATTIE BANNISTER v. MARY N. LUCAS.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

ARGUED APRIL 15, 1912.　　　　　DECIDED AUGUST 10, 1912.

ROBERTSON, C.J., PERRY AND DE BOLT, JJ.

PAYMENT—*burden of proof.*

Payment and counter-claim are affirmative defenses and the burden is upon the party pleading them to prove them by a preponderance of the evidence.

TRIAL—*instructions to jury—comment on evidence.*

An instruction given by a trial judge to a jury from which it may reasonably be inferred that the judge regards certain material evidence as unworthy of credence or of less weight than other opposing evidence is a comment on the character, strength and credibility of the evidence, and the giving of such an instruction is a violation of section 1798 of the Revised Laws. The error is not cured by an instruction that the judge had "no right to comment upon the testimony nor to make any findings of fact."

CONSTITUTIONAL LAW—*Seventh Amendment—trial by jury.*

Section 1798 of the Revised Laws, providing that "the judge * * * * shall in no case comment upon the character, quality, strength, weakness, or credibility of any evidence submitted, or upon the character, attitude, appearance, motive or reliability of any witnesses sworn in a cause; provided, however, that nothing herein shall be construed to prohibit the court from charging the jury whether there is or is not evidence (indicating the evidence) tending to establish or rebut any specific fact involved in the cause," does not impair the right of trial by jury, and does not contravene the Seventh Amendment of the Constitution of the United States.

OPINION OF THE COURT BY ROBERTSON, C.J.

(Perry, J., Dissenting).

The plaintiff obtained judgment against the defendant in an action upon a promissory note, and the defendant brings the case to this court upon exceptions which present certain questions involving the propriety of the instructions given to the

jury by the judge who presided at the trial. We refer to the
dissenting opinion of Mr. Justice Perry for a statement of the
case setting forth the testimony and the instructions excepted
to. We concur in the views there expressed with reference to
the burden of proof being upon the party pleading payment
or a counter-claim to prove them by a preponderance of the
evidence. We also adopt the view that the judge's charge to
the jury transgressed, in the respect pointed out, the provision of
section 1798 of the Revised Laws which prohibits the trial
judges from expressing an opinion to the jury upon the weight
of the evidence adduced upon the trial of any case. The point
raised by counsel for the plaintiff that that section of the Revised
Laws is unconstitutional remains to be considered. That sec-
tion was originally section 1 of chapter 56 of the Session Laws
of 1892. Though enacted several years prior to the annexation
of these islands to the United States and in connection with a
system of trial by jury which in several respects did not con-
form to the common law of England or the requirements of
the Constitution of the United States, it was not one of the
laws expressly repealed by the Act organizing the Territory of
Hawaii, and we think the presumption that it is constitutional
prevails. It is our duty to sustain its validity unless thorough-
ly convinced of its invalidity. We are not so convinced. That
portion of the section which is claimed to be in conflict with the
Seventh Amendment of the Constitution provides that "The
judge  *  *  *  *  shall in no case comment upon the char-
acter, quality, strength, weakness or credibility of any evidence
submitted, or upon the character, attitude, appearance, motive
or reliability of any witness sworn in a cause." The clause is
subject to the proviso "that nothing herein shall be construed
to prohibit the court from charging the jury whether there is
or is not evidence (indicating the evidence) tending to establish
or to rebut any specific fact involved in the cause." If the
statute is open to more than one construction that construction
which renders it free from constitutional objection, if available,

must be adopted. The first reported case dealing with this pro-
vision is *Republic* v. *Pahu,* 10 Haw. 74, decided in 1895. It
was there said, "This Act restricted the powers formerly held
and exercised by the judge in instructing the jury and com-
menting on evidence and witnesses, and throws the whole burden
upon the jury to weigh the evidence and credibility of witnesses
without assistance from the court and generally their verdict
must stand unless it clearly appears that they, the jury, have
abused their powers and judgment, and could not have based
their verdict upon the evidence." In *Republic* v. *Ah Ping,* 10
Haw. 459, the defendant was convicted upon a charge of lar-
ceny. It appeared that a witness had testified that on the
morning after the theft the defendant had told him that a
twenty-dollar piece and some silver had been stolen. The com-
plaining witness testified that he had said nothing to the de-
fendant about a twenty-dollar piece. The court in charging
the jury said that if they believed that the defendant made the
statement attributed to him, it "needs to be accounted for" as
it had "a tendency to prove that the defendant was the one who
stole the money." The jury were also instructed to acquit the
defendant if upon the whole evidence in the case they were not
convinced beyond a reasonable doubt of the defendant's guilt.
This court overruled the exception to the charge saying, "We
think, however, that although a part of the instruction may go
too far taken by itself, the instruction as a whole comes within
the proviso in the latter part of the section above quoted, 'that
nothing herein shall be construed to prohibit the court from
charging the jury whether there is or is not evidence (indicat-
ing the evidence) tending to establish or to rebut any specific
fact involved in a cause.' " In *Republic* v. *Kapea,* 11 Haw.
293, upon an indictment for murder in the first degree, an in-
struction to the jury that under the evidence they should find
a verdict of guilty as charged or of not guilty was held proper
and authorized under the proviso contained in the statute. In
*Territory* v. *Yoshikawa Dengiro,* 15 Haw. 64, this court sus-

tained an exception to an instruction which was held to be unfair. It was there said; "It is contended by the attorney general that the court had a right to make a summary of the evidence to the jury. This may be true but a summary that only considers the evidence of one side and totally ignores that of the other cannot be said to be a fair summary." And included in a quotation there made from an Ohio case we find this statement: "We assume it to be the law, that, while it is not, in this state, the duty of the trial judge to sum up the evidence to the jury, yet it is not improper to do so providing it is fairly done, and all the material evidence on both sides is fairly presented." See *Kaleikini* v. *Waterhouse,* 19 Haw. 359, 361, 362; also *Lyman* v. *Hilo Tribune,* 13 Haw. 453, 456. *In re Notley Will,* 15 Haw. 700, decided June 3, 1904. It was there held that the statute does not prevent a trial judge from directing a verdict when there are no facts shown upon which the jury could properly base a verdict. In that case, for the first time, a suggestion of the possible unconstitutionality of the provision as to the judge's commenting on the evidence was made. In *Territory* v. *Schilling,* 17 Haw. 249, where it was held that a certain comment by the court upon the evidence was not sufficient to cause a reversal of the judgment, it was said, "We do not think, however, that the remark of the court concerning this testimony, although perhaps open to criticism, is likely to have affected the result or requires a reversal of judgment. If the statute required, as we do not think it does, a reversal of judgment for any comments whatsoever made by the court upon the evidence, then it would be requisite to consider whether the statute is constitutional in limiting the right of a common law trial by jury." In *Territory* v. *Kawano,* 20 Haw. 469, it was held that remarks and instructions of the court to the jury which are argumentive comparisons relative to the credibility of witnesses, commending one and disparaging the other, their testimony being vital and in conflict, constitute reversible error.

The foregoing cases show that while the statute has been

viewed with appropriate strictness with respect to its prohibition of the trial judges from commenting upon the evidence, that part of it which authorizes the court to instruct the jury whether there is or is not evidence tending to establish or rebut any specific fact involved has been given a liberal operation. Comment on the evidence such as would be unlikely to affect the verdict has been held not violative of the statute, and the intimation (in the *Yoshikawa Dengiro* case) that the statute does not prevent the trial judge from summing up the evidence was so strong as to practically amount to a ruling. We think it may properly be said, therefore, that the statute does not preclude the judge presiding at the trial of a case from stating or summing up the evidence, or portions of it, and explaining to the jury its bearing upon the questions of law involved, and thus illuminating his instructions as to the law of the case and making clear the actual issues, provided such statement is perfectly fair and impartial and does not disclose to the jury the judge's opinion as to any controverted fact, or the views entertained by him as to the weight of any particular evidence or the credibility of any individual witness. An exhaustive review of the decisions of other courts under statutes similar to ours is not possible because the statutes of many of the States are not at hand, but it appears to be generally held that a statute or constitutional provision which merely forbids comment upon the evidence and witnesses does not prohibit the judge from summing up the evidence. See 1 Blashfield, Instructions to Juries, Sec. 53; 38 Cyc. 1653, 1654; *Com.* v. *Barry*, 9 Allen 276, 279; *Com.* v. *Larrabee*, 99 Mass. 413, 416; *Plummer* v. *Boston Elevated Railway*, 198 Mass. 499, 515; *State* v. *Day*, 79 Me. 120, 124, 125.

Apart from the question of the validity of the statute from a constitutional standpoint the court is not concerned with the policy of the legislation under review. There is room for a difference of opinion on the question whether the proper administration of justice is furthered by the enactment of a statute

such as ours. History records the struggle which was long maintained in England in behalf of the independence of the jury. It will hardly be denied that the giving of the trial judge's opinion as to the evidence and facts must have great weight, and, sometimes, controlling weight, with the jury even though they be instructed that they are the sole judges of the facts. It may readily be conceived that in some cases, where the evidence is conflicting and the question is a close one, jurors are likely to surrender their own opinions to that of the judge. On the other hand, it has been contended with much force that the jury, composed of men unaccustomed to sifting and weighing evidence, need the assistance of the trained mind of the judge to the extent of having his opinion on the facts in order to enable them to intelligently and properly discharge their important duty of deciding questions of fact. We will not attempt to restate the arguments which have been made on the two sides of the question. In a critical article contributed to the American Law Review in the fall of 1889 (Vol. 23, p. 781) by Henry B. Brown, then district judge and afterwards a justice of the United States Supreme Court, referring to certain statutes regulating jury trials, which he said had "become fashionable," which prohibit the judge from charging or commenting on matters of fact, and require all charges to be in writing, and provide for the giving of only such instructions as have been requested, either with or without modification, and require the submission of special questions to the jury, the learned author said, "Perhaps the first of these laws, prohibiting the judge from charging with respect to matters of fact is the least objectionable, both upon the score of constitutionality and expediency." And he conceded "a great difference of opinion, even among the leading men of the profession, with regard to the propriety of a judge expressing his views of the testimony to the jury."

The question, then, is whether this statutory provision as heretofore construed and now understood is in conflict with the

Seventh Amendment of the Constitution which declares that "in suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." There seems to be no reported case in which the constitutionality of a similar statute has been passed upon. After the exceptions in this case were argued counsel were requested to further brief the constitutional question, and at the request of the court, the question being one of general importance, briefs have been submitted by the attorney general and the city and county attorney of Honolulu. The diligence of counsel has failed to bring to light a single case in which the question was discussed. This fact is of great significance. It is said that the rule prohibiting trial judges from commenting on the facts and expressing an opinion on the weight of the evidence prevails in a majority of the States. 38 Cyc. 1646. In a few of the States, five we believe, the subject is covered by constitutional provision. And in a few we believe the practice is followed without any constitutional or statutory requirement. In several of the States in which the constitutions contain provisions preserving the right of trial by jury similar to the provision of the Seventh Amendment statutes more or less like ours have been in force for a great many years. In North Carolina, for example, since 1796, *State* v. *Lipsey,* 14 N. C. 485; in Texas since 1853, *T. & P. R. Co.* v. *Murphy,* 46 Tex. 356; in Massachusetts since 1860, *Com.* v. *Barry,* supra; and in Maine since 1874, *State* v. *Day,* supra. In *Hopt.* v. *Utah,* 104 U. S. 631, and 114 U. S. 488, judgment of conviction upon a charge of murder was twice reversed because the trial judge had charged the jury orally in violation of a provision of the code of the Territory of Utah which required that the charge should be reduced to writing before being delivered. And in the same case in 110 U. S. 574, the judgment was reversed for violation of the provision of the code of the Territory that the judge "may state the testimony and declare the law," but "must not charge the jury in respect of matters of fact," the court

saying, "The prisoner had the right to the judgment of the jury upon the facts uninfluenced by any direction from the court as to the weight of evidence." It is true the question of the constitutionality of the statute was not raised in that case, and we regard that fact as significant. And while the Supreme Court would not be likely to question the constitutionality of an act of Congress when the question had not been agitated by counsel, we doubt whether it would have refrained from suggesting the point as to the legislation of the Territory had it entertained the opinion that it was invalid. About twenty-three years have elapsed since the publication of Mr. Justice Brown's article, and thirteen years have passed since the decision of the case of *Capital Traction Co.* v. *Hof,* 174 U. S. 1, the case principally relied on by the appellee, yet during this time no attempt has been made so far as we have been able to ascertain to get rid of the statute in any jurisdiction where it has been enacted either by repealing it or having it declared unconstitutional. This would seem to indicate an opinion on the part of the profession generally that the statute is not obnoxious to the constitutional requirement.

It must be regarded as settled that the Seventh Amendment applies to the Territories. *Thompson* v. *Utah,* 170 U. S. 343 ; *Black* v. *Jackson,* 177 U. S. 349 ; *Rasmussen* v. *United States,* 197 U. S. 516. And that "the right of trial by jury" which the Amendment preserves is that right as it existed at common law. But was the practice of charging the jury upon the facts a fundamental element of the right itself or merely an incident of that right growing out of the habit of the English judges in summing up the case to comment on the evidence and give their views thereon to the jury? The Federal Constitution is regarded as an enumeration of general principles, designed to endure for all time, to be read in the light of the common law, and to be applied and adapted to new conditions as they may arise. In this view the Seventh Amendment should not be, and, we believe, has not been, regarded as having been designed to

perpetuate trial by jury as it was practiced in England at the time of the adoption of the Constitution in all its details. It was the right, not necessarily all the incidents of that right, that was intended to be secured. The right itself was and is preserved, but its incidents are subject to legislative control, and the practice in applying and the mode of enforcing the right may be altered to meet changed conditions. Legislation which merely regulates the exercise of the constitutional right and does not rob it of any of its essential ingredients does not constitute an infringement of the right. The constitutional guaranty of this right did not necessarily extend to an accidental element as distinguished from an inherent part of the institution. *Dowling* v. *State,* 5 S. & M. (Miss.) 664, 682, 685; *Warren* v. *Com.* 37 Pa. St. 45, 52, 53. *Com.* v. *Dorsey,* 103 Mass. 412, 418, 419; *Foster* v. *Morse,* 132 Mass. 354; *Stokes* v. *People,* 53 N. Y. 164, 173. In *Peirson* v. *Boston El. Ry. Co.,* 191 Mass. 223, 230, the court quoted the case of *Capital Traction Co.* v. *Hof,* to the effect that "a trial by jury of twelve men in the presence and under the charge and supervision of the judge empowered to instruct them on the law," and "to set aside the verdict if in his opinion it is against the law or the evidence," and held that a statute providing that a verdict should not be set aside except upon motion stating the reasons relied upon in its support did not conflict with the clause of the constitution of Massachusetts which secured the right of trial by jury. In *State* v. *Withrow,* 133 Mo. 500, 519, the court said that the constitutional declaration that "the right of trial by jury, as heretofore enjoyed shall remain inviolate," means "that all the substantial incidents and consequences which pertained to the right of trial by jury are beyond the reach of hostile legislation, and are preserved in their ancient substantial extent as existing at common law."

If, therefore, we are dealing with a mere insubstantial incident and not with a constituent part of the fundamental right, the Constitution has not been violated if the legislation has left

the right practically intact. And we believe the right is left intact by the statute and practice of this Territory.

It has long been settled that in the courts of the United States the trial judges may, if they deem it advisable, comment upon the evidence and express their opinions relative thereto to the jury, provided the comment is not unfair and the decision of the facts is left absolutely to the jury. *Carver* v. *Astor,* 4 Pet. 1; *Kelly* v. *Jackson,* 6 Pet. 622; *Nudd* v. *Burrows,* 91 U. S. 426; *Railroad* v. *Putnam,* 118 U. S. 545; *United States* v. *Railroad,* 123 U. S. 113; *Starr* v. *United States,* 153 U. S. 614. Also that state statutory and constitutional provisions regulating the practice in jury trials do not affect the Federal practice. *Nudd* v. *Burrows,* supra; *St. Louis R. Co.* v. *Vickers,* 122 U. S. 360; *Indianapolis R. Co.* v. *Horst,* 93 U. S. 291. But it does not necessarily follow that the practice heretofore observed in the Federal courts cannot be changed by Congress, or that the Seventh Amendment requires that the practice shall be followed in the courts of the Territories.

Blackstone described the charging of the jury as follows: "When the evidence is gone through on both sides, the judge, in the presence of the parties, the counsel and all others, sums up the whole to the jury; omitting all superfluous circumstances, observing wherein the main question and principal issue lies, stating what evidence has been given to support it, with such remarks as he thinks necessary for their direction, and giving them his opinion in matters of law arising upon that evidence." 3 Bl. Com. 375. Judge Cooley said, "Many of the incidents of a common law trial by jury are essential elements of the right. The jury must be indifferent between the prisoner and the Commonwealth; and to secure impartiality challenges are allowed, not only for cause, but also peremptory without assigning cause. The jury must also be summoned from the vicinage where the crime is supposed to have been committed. * * * The jury must unanimously concur in the verdict. * * * And the jurors must be left free to act in ac-

cordance with the dictates of their judgment. The final decision of the facts is to rest with them, and interference by the court with a view to coerce them into a verdict against their convictions is unwarrantable and irregular." Cooley, Con. Lim. (7th Ed.) 459, 460. Neither of those eminent authorities refer to the giving to the jury the judge's opinion on the facts as an element of the right of trial by jury. It has been referred to as "practice" in a way as to differentiate it from a matter of fundamental right. See 1 Blashfield, Instructions to Juries, Sec. 53. In *Railroad* v. *Putnam,* supra, it was said, "In the courts of the United States, as in those of England, from which our practice was derived, the judge, in submitting a case to the jury, may, at his discretion, whenever he thinks it necessary to assist them in arriving at a just conclusion, comment upon the evidence, call their attention to parts of it which he thinks important, and express his opinion upon the facts." 118 U. S. 553. "The English practice and also the Federal practice permit this to be done, but not ours." *Withers* v. *Lane,* 144 N. C. 184, 190. In *Capital Traction Co.* v. *Hof,* supra, Mr. Justice Gray, speaking for the court, defined the common law right of trial by jury as follows: " 'Trial by jury' in the primary and usual sense of the term at the common law and in the American constitutions, is not merely a trial by a jury of twelve men before an officer vested with authority to cause them to be summoned and empaneled, to administer oaths to them and to the constable in charge, and to enter judgment and issue execution on their verdict; but it is a trial by a jury of twelve men, in the presence and under the superintendence of a judge empowered to *instruct them on the law* and to *advise them on the facts,* and (except on acquittal of a criminal charge) to set aside their verdict if in his opinion it is against the law or the evidence." 174 U. S. 13, 14. The case of *Lamb* v. *Lane,* 4 Oh. St. 167, 179, was there quoted from wherein this language was used, "the word 'jury' in section 19 of article 1, as well as in other places

in the constitution where it occurs, means a tribunal of twelve men, presided over by a court, and hearing the allegations, evidence and arguments of the parties." *The Opinion of Justices,* 41 N. H. 550, was also quoted from wherein this language was used, "A jury for the trial of a cause was a body of twelve men, * * * who, after hearing the parties and their evidence, and receiving the instructions of the court relative to the law involved in the trial, and deliberating, when necessary, apart from all extraneous influences, must return their unanimous verdict upon the issue submitted to them." There is also a quotation from *United States* v. *Bags of Merchandise,* 2 Sprague 85, 88, including this: "Now the trial by jury was, when the Constitution was adopted, and for generations before that time had been, here and in England, a trial of an issue of fact by twelve men, under the direction and superintendence of the court. This direction and superintendence was an essential part of the trial." None of those quotations contain any statement in regard to the court's expressing its opinion on the facts to the jury. The quotation from Hale's History of the Common Law, that the judge is able "in matters of fact, to give them great light and assistance, by his weighing the evidence before them, and observing where the question and knot of the business lies; and by showing them his opinion even in matter of fact, which is a great advantage and light to laymen," seems to us to be a description of the English practice rather than an enumeration of the fundamentals of the right of trial by jury. Justice Gray's language that at common law the trial judge was empowered to "advise" the jury on the facts does not necessarily mean that the practice of giving them his opinion on the facts was an inherent part of the right of trial by jury. Full effect may be given to the language of the court in the case of *Capital Traction Co.* v. *Hof* by a holding that the power referred to, to advise on the facts, is the power to state or sum up the evidence. This is in accord with the procedure described by

Blackstone, and it does not include the expressing of an opinion on the weight of the evidence or the credibility of the witnesses which only is prohibited by our statute. We are of the opinion, therefore, that section 1798 of the Revised Laws is not in conflict with the Seventh Amendment of the Constitution.

Defendant's exceptions Nos. 8, 9 and 10 are sustained; the judgment is vacated; and a new trial granted.

*J. Lightfoot* for plaintiff.

*W. B. Lymer* (*Thompson, Wilder, Watson & Lymer* on the brief) for defendant.

### DISSENTING OPINION OF PERRY, J.

This is an action of assumpsit for principal and interest on a promissory note for $1000 executed by the defendant in favor of the plaintiff. The defendant in her answer admits the execution and delivery of the note and pleads its payment in full save as to the sum of $62 principal and $63.47 interest and adds a counter-claim for $1068.95 for moneys advanced, presenting a net claim in favor of the defendant of $943.48. Trial was had before a jury on the issue of the payments and advances. The verdict was for the plaintiff in the sum of $1365.68.

One of the exceptions is to the court's refusal to give defendant's requested instruction that "in this as in all civil cases, it devolves upon the plaintiff to prove by a fair preponderance of the evidence the allegations of her complaint and in judging what constitutes a fair preponderance of the evidence you should take in consideration all of the testimony, that adduced by the plaintiff and by the defendant, and the interest of any witness or witnesses regarding the matter testified to, their bias or prejudice if any, and the probability or improbability of their story." Upon the point involved the instruction of the court was in effect that the plaintiff's duty to prove her case by a preponderance of the evidence was

sufficiently performed by the defendant's admission of the execution and delivery of the note and that "the affirmative defense of the defendant, that is to say, the counter-claim, would in my opinion have to be proved by a preponderance of the evidence. In other words, the burden of proof would be upon the defendant to show the affirmative defense, in other words, the amount of the payments alleged to have been made." The instruction as given was correct. Payment and counter-claim are affirmative defenses and the burden is upon the party pleading them to prove them by a preponderance of the evidence. 22 Ency. 587; 30 Cyc. 1264; *Simonton* v. *Winter,* 5 Pet. 141; *Grant* v. *Roberts,* 38 S. W. (Tex.) 650; *Meyer* v. *Hafemeister,* 119 Wis. 539; *Smith* v. *Woodworth,* 43 Vt. 39; *Ford* v. *Lawrence,* 51 S. W. (Tenn.) 1023; *Railroad* v. *Adams,* 54 Pa. St. 94; *Harmon* v. *Taylor,* 98 N. C. 341; *Wessel v. Bishop,* 107 N. W. (Neb.) 220; *Ferguson* v. *Dalton,* 158 Mo. 323; *National Bank* v. *Hellyer,* 53 Kans. 695; *Walker* v. *Russell,* 73 Ia. 340; *Liesemer* v. *Burg,* 106 Mich. 124; *Willis* v. *Holmes,* 28 Or. 265.

The defendant's main reliance is upon the exceptions presenting the question of whether the presiding judge in his charge to the jury commented upon the weight of the evidence contrary to the provisions of R. L., section 1798. That section provides that "the jury shall in all cases be the exclusive judges of the facts in suits tried before them, and the judge presiding at any jury trial * * * shall in no case comment upon the character, quality, strength, weakness or credibility of any evidence submitted, or upon the character, attitude, appearance, motive or reliability of any witness sworn in a cause; provided, however, that nothing herein shall be construed to prohibit the court from charging whether there is or is not evidence (indicating the evidence), tending to establish or to rebut any specific fact involved in the cause."

The plaintiff's case in the main was that in May, 1903, she sold to the defendant all her interest in certain real estate for

the agreed sum of $5000; that the defendant paid $2500 cash on account, assumed payment of a mortgage upon other property of the plaintiff in favor of one Wiggins for the sum of $600 and gave two promissory notes, one for $900, admittedly outlawed by the statute of limitations at the time of the institution of the present suit, and the note which is the subject of this action. The defendant's contention, on the other hand, was, admitting the sale and purchase, that the agreed price was $2500 and that payment was made by the assumption of the Wiggins' mortgage for $600 and the giving of the two notes, one for $900 and one for $1000; that subsequent to this transaction various sums were paid from time to time by the defendant to the plaintiff, at first in payment of the $1000 note and subsequently by way of loans to the plaintiff, the latter class of items being the subject of the counter-claim pleaded in the answer. In reply the plaintiff's claim was that such payments as were made by the defendant to the plaintiff, aside from the first item of $2500, were applied to the $900 note, that the $1000 note remained unpaid and that no advances purely as such were made.

After giving a brief outline of the case the court instructed the jury as follows:

"While you are the sole judges of the facts as presented to you by the testimony of the witnesses, it is within the province of the court to tell you what evidence there is tending to prove certain facts. Taken from the plaintiff's standpoint there is evidence tending to prove that the consideration paid by Mrs. Lucas, or agreed to be paid by Mrs. Lucas to her, was five thousand dollars. There is evidence tending to prove that that payment was made by the giving of twenty-five hundred dollars in cash, a note for one thousand dollars, which is not the subject of this suit and is not to be considered by you so far as judgment is concerned and only so far as the question of application of payments, with another balance of six hundred dollars, said to have been for the purpose of applying upon the Wiggins mortgage. It becomes important for you in the first instance, it appears to me, under the issue framed in this case, to determine first of all what was the purchase

price agreed to be paid by Mrs. Lucas to Mrs. Bannister, and around that principal fact revolve the other incidents that you must consider in order to arrive at your verdict.

"The consideration named in a deed is not conclusive; it only remains in the deed as prima facie evidence of the consideration until disproved. There is testimony tending to prove that the consideration named in the deed from Mrs. Bannister to Mrs. Lucas was not the correct consideration, and you may take into consideration the testimony that has been given upon that point in arriving at your conclusion.

"The payments admitted by the plaintiff I have made a memorandum of, and, while my memorandum is not binding in any way upon you as to what your finding should be, my view of the case is that there is evidence tending to prove that there have been items paid by Mrs. Lucas, through her husband Mr. Charles Lucas, of $2500 at the outset of the transaction between these parties and other items amounting to $1350.45, which, according to my figures, would make a total payment admitted by the plaintiff of $3850.45, which, subtracted from the $5000 alleged to have been the consideration money, would leave the sum of one thousand one hundred and forty-nine dollars and fifty-five cents due at the date on which the note became due. I wish to reiterate, gentlemen, that this is not a finding for you to follow; that is simply my idea of what the evidence tends to prove; you may set that aside entirely in your finding, for I have no right to comment upon the testimony nor to make any finding of facts but I simply have the right to say what in my opinion the testimony tends to prove.

"So much for the plaintiff's side of the case as I view it. The testimony of the defendant tends to prove that the original consideration agreed upon between the plaintiff and the defendant was $2500, the items of which have been testified to by the defendant as having been paid on the original note and on the counter-claim, amount to $1896.47. The $100 item, being the first item, Exhibit 'A', has been abandoned. The first item in the counter-claim of $10 has likewise been abandoned. There are several other items upon which it seems to me the evidence does not warrant my fixing any suggestion as to it tending to prove or disprove any fact; those matters are still entirely in your hands and you may take them

up as being conclusively or satisfactorily proved or not as you believe the testimony, so that if you disbelieve or are not satisfied with the testimony of the plaintiff, as I see it, there is evidence tending to prove that the defendant is entitled to a judgment for $894.47."

Whatever might be said of the remainder of the instructions just quoted, if they had stood alone, those portions relating to the court's memorandum and payments admitted to have been received by the plaintiff and to the "other items" which did "not warrant * * * fixing any suggestion" as to their tending to prove or disprove any fact, were clearly within the prohibition of section 1798. An examination of the transcript of the evidence adduced at the trial shows that there was evidence from which the jury could have found a total of $1375 (or, if the plaintiff referred to one item only of $15 instead of two such items, then a total of $1360), and not $1350.45, admitted to have been received by the plaintiff from the defendant in addition to the main payment of $2500 referred to in the instructions. In addition there was evidence of items of $10, $48 and $5, respectively, testified to on behalf of the defendant as having been paid by her to the plaintiff and concerning which the plaintiff in her testimony simply said that she did not remember whether those payments had been made to her. The presiding judge's remarks on the subject could reasonably have led the jury to believe that the evidence relating to any payments, aside from the item of $2500 and the total of $1350.45, was deemed by him unworthy of credence or at least of not as much weight as the evidence specifically referred to by him. The statement concerning the other items not warranting the judge in "fixing any suggestion" concerning them could reasonably have strengthened and emphasized this understanding on the part of the jury as well as reasonably have led them to believe that in his remarks the judge had referred, both on the subject of the plaintiff's evidence and on the subject of the defendant's

evidence, to all of the items and phases of the case regarded by him as worthy of serious consideration by the jury. Nor was the error in making these comments cured by the statements to the jury that he, the judge, had "no right to comment upon the testimony nor to make any findings of fact" and that the jury were the exclusive judges of the facts and of the credibility of the witnesses. The information had, nevertheless, been conveyed to the jury as to the weight accorded by the judge to the evidence referred to in the comments in question as against other evidence not specifically mentioned by him.

The instructions violate the provisions of the statute and it becomes necessary, therefore, to consider the further contention advanced by the plaintiff that the statute is unconstitutional and void on the ground that it is contrary to the provisions of the Seventh Amendment to the Constitution,—unless it is true that, as suggested by the defendant, even though the statute is unconstitutional, the charge as given was objectionable under the rules of the common law.

Assuming, for the moment, that the statute is unconstitutional and that under the constitutional guarantee the parties are entitled to a trial at which the judge shall have the power of commenting on the weight of the evidence, but also that, as suggested by defendant, the comments, if any, must be fair, the charge given in the case at bar cannot be held objectionable. While the language used disclosed the opinion of the trial judge concerning the relative merits of the claims, or some of them, of the parties upon the issues of fact, it was not unfair. The judge did indeed give to the jury a memorandum of the payments admitted by the plaintiff to have been made by the defendant and as pointed out above that memorandum was in some respects incomplete. The jury were, however, carefully instructed that "my memorandum is not binding in any way upon you as to what your finding should be. * * * I wish to reiterate, gentlemen, that this is

not a finding for you to follow but that it is simply my idea of what the evidence tends to prove; you may set that aside ·entirely in your finding for I have no right to comment upon the testimony or to make any finding of facts but I simply have the right to say what in my opinion the testimony tends to prove." And again: "There are several items upon which it seems to me the evidence does not warrant my fixing any suggestion as to it tending to prove or disprove any fact; those matters are still entirely in your hands and you may take them up as being conclusively or satisfactorily proved or not as you believe the testimony. *** If you believe from the testimony that certain advances were made by the defendant to the plaintiff then these advances are to be credited to the defendant and against the plaintiff as you consider those amounts to have been proved by a preponderance of the evidence." The fact that items had been testified to other than those contained in the judge's memorandum of payments or otherwise referred to in the charge was sufficiently called to the attention of the jury by the judge and so also they were clearly instructed that it was within their province and a part. of their duty to consider all of the matters testified to whether specifically referred to in the memorandum or charge or not.

Is the statute constitutional? Upon this point I am unable to concur in the views of the majority. A consideration of the following questions is involved: (1) Does article 7 of the amendments to the Constitution apply to the Territory of Hawaii? (2) What did the "trial by jury" consist of, the right to which was preserved by that amendment? (3) At such a "trial by jury" did the presiding judge have the power to comment on the weight of the evidence and to express his opinion on the facts? (4) If he did, was the power one of the essentials of the trial?

Article 7 of the amendments to the Constitution provides that "in suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be

preserved." There is no room for doubt at this day that this amendment applies to the Territory of Hawaii. The Organic Act specifically declares in section 5 that "the Constitution, and, except as otherwise provided, all the laws of the United States * * * which are not locally inapplicable, shall have the same force and effect within the said Territory" of Hawaii "as elsewhere in the United States." This language is unambiguous and of itself sufficient to show that the Seventh Amendment is in force here. In a number of cases decided since June, 1900, when the Organic Act went into effect, this court has recognized that other articles of the amendments, including the fifth and the sixth, the first relating to indictments for infamous crimes and to the requirement of due process of law and the second securing to the accused in all criminal prosecutions the right to a trial by an impartial jury, are in full force in Hawaii. See, for example, *Robertson* v. *Pratt,* 13 Haw. 590, in which the court said, "the Fifth Amendment, however, which provides that 'no person shall be * * * deprived of life, liberty or property without due process of law,' undoubtedly applies to the Territories"; and *Pringle* v. *Hilo Mercantile Co.,* Id. 705; *In re Wong Lung,* 17 Haw. 168; *Ex parte Higashi,* Id. 428; *In re Ewa Plantation Co.,* 18 Haw. 530; *Territory* v. *Pottie,* 19 Haw. 99; *Territory* v. *Martin,* Id. 201; *Trust Co.* v. *Treasurer,* Id. 262; *In re Atcherley,* Id. 346 and 535; *Territory* v. *Toyota,* Id. 651; *Territory* v. *Soga,* 20 Haw. 71, and *Bicknell* v. *Herbert,* Id. 132. In *Territory* v. *Schilling,* 17 Haw. 249, 264, 265, the court said, with reference to the very statute now under consideration, "if the statute requires, as we do not think that it does, a reversal of judgment for any comments whatsoever made by the court upon the evidence, then it would be requisite to consider whether the statute is constitutional in limiting the right to a common law trial by jury"; but found it unnecessary to pass upon the question of constitutionality since it construed the statute as not requiring a reversal for comments

such as those which had been made by the trial judge in that case.

The Supreme Court of the United States likewise has expressed itself clearly upon the subject. "In *Reynolds* v. *United States,* 98 U. S. 145, 154, it was taken for granted that the Sixth Amendment of the Constitution secured to the people of the Territories the right of trial by jury in criminal prosecutions; and it had been previously held in *Webster* v. *Reid,* 11 How. 437, 460, that the Seventh Amendment secured to them a like right in civil actions at common law." *Callan* v. *Wilson,* 127 U. S. 540, 550. "The Seventh Article of Amendment of the Constitution declares that 'in suits at common law, where the value in controversy shall exceed twenty dollars, the right to trial by jury shall be preserved; and no fact tried by a jury shall be otherwise re-examined in any court of the United States than according to the rules of the common law.' This Article of the Constitution is in full force in Montana as in all other organized Territories of the United States." *Kennon* v. *Gilmer,* 131 U. S. 22, 28. "That the provisions of the Constitution of the United States relating to the right of trial by jury in suits at common law apply to the Territories of the United States is no longer an open question." *Thompson* v. *Utah,* 170 U. S. 343, 346. See also *American Publishing Co.* v. *Fisher,* 166 U. S. 464; *Salt Lake City* v. *Tucker,* Id. 707; *Capital Traction Co.* v. *Hof,* 174 U. S. 1, 5.

It is equally clear that the right secured by the Seventh Amendment is to a trial by jury as it existed at the common law at the time of the adoption of the Constitution and that a judge empowered to advise on the facts as well as to direct on the law was as indispensable a part of that trial as was the jury authorized to determine the facts. " 'Trial by jury,' in the primary and usual sense of the term at the common law and in the American constitutions, is not merely a trial by a jury of twelve men before an officer vested with authority

to cause them to be summoned and empaneled, to administer oaths to them and to the constable in charge, and to enter judgment and issue execution on their verdict; but it is a trial by a jury of twelve men, in the presence and under the superintendence of a judge empowered to instruct them on the law and to advise them on the facts, and (except on acquittal of a criminal charge) to set aside their verdict if in his opinion it is against the law or the evidence. This proposition has been so generally admitted, and so seldom contested, that there has been little occasion for its distinct assertion. Yet there are unequivocal statements of it to be found in the books. Lord Hale, in his History of the Common Law, c. 12, 'touching trial by jury,' says: 'Another excellency of this trial is this, that the judge is always present at the time of the evidence given in it. Herein he is able in matters of law, emerging upon the evidence, to direct them; and also, in matters of fact, to give them great light and assistance, by his weighing the evidence before them, and observing where the question and knot of the business lies; and by showing them his opinion even in matter of fact, which is a great advantage and light to laymen. And thus, as the jury assists the judge in determining the matter of fact, so the judge assists the jury in determining points of law, and also very much in investigating and enlightening the matter of fact, whereof the jury are the judges.' And again, in summing up the advantages of trial by jury, he says: 'It has the advantage of the judge's observation, attention and assistance, in point of law by way of decision, and in point of fact by way of direction to the jury.' 2 Hale Hist. Com. Law, (5th ed.) 147, 156. See also 1 Hale P. C. 33.' 'The Constitution secures a trial by jury, without defining what that trial is. We are left to the common law to learn what it is that is secured. Now the trial by jury was, when the Constitution was adopted, and for generations before that time had been, here and in England, a trial of an issue of fact by twelve men, under the direction and superintendence of

the court. *This direction and superintendence was an essential part of the trial.*' 'At the time of the adoption of the Constitution, it was a part of the system of trial by jury in civil cases that the court might, in its discretion set aside a verdict.' 'Each party, the losing as well as the winning, has a right to the legitimate trial by jury, with all its safeguards, as understood when the Constitution was adopted.' *United States* v. *Bags of Merchandise,* (1863) 2 Sprague, 85-88. This court has expressed *the same idea,* saying: 'In the courts of the United States, as in those of England, from which our practice was derived, the judge, in submitting a case to the jury, may, at his discretion, whenever he thinks it necessary to assist them in arriving at a just conclusion, comment upon the evidence, call their attention to parts of it which he thinks important, and express his opinion upon the facts.' *Vicksburg &c. Railroad* v. *Putnam,* (1886) 118 U. S. 545, 553." *Capital Traction Co.* v. *Hof,* supra. The language of the court and of the authorities quoted by it in support and elaboration of its definition of "trial by jury" renders it clear to my mind that the power mentioned "to advise on the facts" includes the power to communicate to the jury the judge's view concerning the weight of the evidence and his opinion as to the facts,—subject always to the qualification that the determination of the issues of fact must be distinctly left to the jury—and is an essential part of the trial. "Trial by jury in the courts of the United States is a trial presided over by a judge, with authority, not only to rule upon objections to evidence, and to instruct the jury upon the law, but also, when in his judgment the due administration of justice requires it, to aid the jury by explaining and commenting upon the testimony, and even giving them his opinion upon questions of fact, provided only he submits those questions to their determination." *United States* v. *Railroad,* 123 U. S. 113, 114. "In what does the right of trial by jury consist? The Constitution furnishes no answer. It is spoken of as something already suf-

ficiently understood, and referred to a matter already familiar to the public mind. It was unnecessary to define this right. It then stood as a representative of an idea as certain and definite as any other in the whole range of legal learning. It is the right recognized in the *Magna Charter* and is the same that was brought to this Continent by the first settlers from England." *Barlow* v. *Daniels,* 25 W. Va. 512, 517. See also *Railroad* v. *Putnam,* supra; *Lovejoy* v. *United States,* 128 U. S. 171, 173; *Simmons* v. *United States,* 142 U. S. 148, 155; *West* v. *Gammon,* 98 Fed. 426, 427; Cooley's Constitutional Limitations (6th ed.), 389.

In *Nudd* v. *Burrows,* 91 U. S. 426, 439, the following was said: "Care must be taken that the jury is not misled into the belief that they are alike bound by the views expressed upon the evidence and the instructions given as to the law. They must distinctly understand that what is said as to the facts is only advisory and in no wise intended to fetter the exercise finally of their independent judgment. Within these limitations it is the right and duty of the court to aid them by recalling the testimony to their recollection, by collating its details, by suggesting grounds of preference where there is contradiction, by directing their attention to the most important facts, by eliminating the true points of inquiry, by resolving the evidence, however complicated, into its simplest elements, and by showing the bearing of its several parts and whether of a binding effect, stripped of every consideration which might otherwise mislead or confuse them. How this duty shall be performed depends in every case upon the discretion of the judge. There is none more important resting upon those who preside at jury trials. Constituted as juries are it is frequently impossible for them to discharge their function wisely and well without this aid. In such cases chance, mistake or caprice may determine the result."

"In the courts of the United States, as in those of England from which our practice was derived, the judge in submitting

a case to the jury may at his discretion, whenever he thinks it necessary to assist them in arriving at a just conclusion, comment upon the evidence, call their attention to parts of it which he thinks important, and express his opinion upon the facts; but the expression of such an opinion, when no rule of law is incorrectly stated and all matters of fact are ultimately submitted to the determination of the jury cannot be reviewed on writ of error." *Railroad* v. *Putnam,* supra. With the charge of the court to the jury upon mere matters of fact and with its commentaries upon the weight of evidence this court has nothing to do. Observations of that nature are understood to be addressed to the jury merely for their consideration as the ultimate judges of matters of fact; and are entitled to no more weight or importance than a jury in the exercise of their own judgment choose to give them." *Carver* v. *Astor,* 4 Pet. 1, 79, 80. See also *Lovejoy* v. *United States,* supra; *Simmons* v. *United States,* supra; *Ganes* v. *Dunn,* 14 Pet. 322, 326; *Magniac* v. *Thomson,* 7 Pet. 348, 389; *Mitchell* v. *Harmony,* 13 How. 115, 131; *Railroad* v. *Vickers,* 122 U. S. 361, 363; *United States* v. *Railroad,* 123 U. S. 113, 114; and *Kerr* v. *Modern Woodmen of America,* 117 Fed. 593, 596.

The fact that the statute under consideration has been in force in Hawaii since 1892 cannot avail in this instance as against the decisions of the Supreme Court of the United States. It is established by these decisions that it is the common law of England at the date of the adoption of the Constitution, and, necessarily, not the common law or the statutes of Hawaii, that is to be resorted to in order to ascertain the essentials of the "trial by jury" whose continuance was preserved by the Constitution. Argument would seem to be unnecessary to support the conclusion that the framers of that instrument could not have had in mind the laws or the practice of Hawaii. And when Hawaii became a part of the United States it accepted the guaranties of the Seventh Amend-

ment with such changes in practice, if any, as might be thereby involved.

From States having constitutional provisions to the same effect as that of the Seventh Amendment cases are cited in which it has been held that the presiding judge has not the power to comment upon the weight of the evidence or to express an opinion on the facts. In a few of those cases the decisions were influenced, in part at least, by statutes, like ours, expressly prohibiting such comments. In the others the rulings would seem to have been made in the absence of any such statute. In none of them was the question of the validity of such statutes or practice considered or raised. There is, indeed, room for the argument, from the failure of those courts to declare such statutes unconstitutional, that the power of the judge to comment on the evidence was not by those courts deemed an essential part of trial by jury, but on the other hand the consideration is at least equally forcible that courts do not decide or consider issues of unconstitutionality unnecessarily. In any event this negative showing from state courts should not prevail against the expressed views of the Supreme Court of the United States in the *Hof* case.

Referring to some of the other cases cited: In *Hopt* v. *Utah*, 110 U. S. 574, a conviction of murder in the first degree was set aside on the ground that the trial judge commented on the weight of the evidence in violation of the provisions of a statute of the Territory of Utah that the judge "must not charge the jury in respect of matters of fact"; but the question of the constitutionality of the statute was not raised or considered. In *Hicks* v. *United States*, 150 U. S. 442, also a case of murder, comments adverse to the credibility of the defendant resulted in the award of a new trial. The ruling, however, was in substance that the comments or instructions included an erroneous exposition of the law applicable to the point under consideration and were themselves unfair. It is evident that none of the earlier decisions of the Supreme

Court were regarded by the court as in conflict with the law laid down in the *Hof* case. On the contrary the observation was made that "the proposition has been so generally admitted and so seldom contested that there has been little occasion for its distinct assertion."

The case of *Peirson* v. *Boston Elevated Railway,* 191 Mass. 223, is not an authority in support of the appellant. It was there held that a statute providing that "a verdict shall not be set aside except upon a motion in writing by a party to the cause, stating the reasons relied upon in its support, filed and heard after notice to the adverse party according to the rules of court" was not in conflict with the provision of the constitution of Massachusetts which secured the right of trial by jury. The conclusion reached was based upon the view that it is competent for a losing party to waive any one or all of the possible grounds for a new trial. This was not the equivalent of holding that a statute forbidding trial judges to grant a new trial in any case would not violate the constitutional provision. In effect the decision was that the constitutional guarantee of a trial presided over by a judge empowered to set aside the verdict if in his opinion it is against the law or the evidence was not infringed upon by a statute permitting unsuccessful litigants to waive the benefit of a new trial or of any of the possible grounds for securing one and requiring presiding judges not to force new trials upon parties not desiring them,—a view in keeping with the familiar principle that courts do not act in awarding judgments or in otherwise granting relief except upon application of the parties. The distinction here sought to be presented was recognized by the court. It said, inter alia: "The statute now in question does not absolutely deprive the parties of the right to have a new trial, if it seems to the presiding judge that one ought to be ordered. If that were the case, a very different question would be raised from the one which is now before us. It simply provides * * * that they shall be deemed to waive their right to

Bannister v. Lucas, 21 Haw. 222.

ask for one unless they shall have seasonably exercised it in the manner required by the statute and the rule of court made in pursuance thereof, and that the court shall not in such an event force upon them a new trial which has not been asked for and presumably is not desired by either of them."

While in the *Hof* case it was not expressly held that statutes like ours are unconstitutional in the Territories, the views expressed concerning the definition of the words "trial by jury" in the Seventh Amendment and the essential requirements of a trial by jury at the common law of England irresistibly lead to the conclusion, as it seems to me, that a statute which deprives the judge of one of those essential powers violates the amendment. The position that our statute in effect permits the presiding judge to "advise the jury on the facts", within the meaning of that expression as used by the court in the *Hof* case, seems to me to be untenable. All that it does permit is that the judge charge the jury whether there is or is not evidence (indicating the evidence) tending to establish or rebut any specific fact involved in the cause. That is not a grant of authority to give to the jury advice upon the facts. A judge who fully exercises the powers conceded to him by the statute and yet conscientiously heeds its injunctions will inform the jury what evidence there is which tends to support or to rebut the various claims of fact advanced by the parties and even may, let it be assumed, give a fair summary of all the evidence adduced by each party, but will at the same time so frame his charge on these matters as to be certain not to disclose to the jury his opinion concerning the weight of any of the evidence or the credibility of any of the witnesses. The statute, in prescribing that "the judge presiding at any jury trial * * * shall in no case comment upon the character, quality, strength, weakness or credibility of any evidence submitted, or upon the character, attitude, appearance, motive or reliability of any witness sworn in a cause," attempts to restrain the judge from doing that which at common law he was

authorized to do. Fettered by these prohibitions he cannot "in matters of fact * * * give them" (the jurors) "light and assistance, by his verifying the evidence before them and observing where the question and knot of the business lies" or "by showing them his opinion even in matter of fact, which is a great advantage and light to laymen," or assist them "in investigating and enlightening the matter of fact, whereof the jury are the judges." To the extent stated the statute is inconsistent with the Seventh Amendment and is therefore invalid. The Organic Act continued in force only those laws of Hawaii "not inconsistent with the Constitution or laws of the United States or the provisions" of that act and granted to the Territory legislative power extending "to all rightful subjects of legislation not inconsistent with the Constitution and Laws of the United States locally applicable." Sections 6 and 55.

It is true, as contended by counsel for the defendant, that section 1798 has often been enforced by this court as well as by trial judges but the question of its constitutionality has not been raised in any previous case in this court. The presumption always is that an act passed by the legislature is constitutional and valid and courts do not consider questions of possible unconstitutionality unless compelled to do so by the state of the record. Cooley's Constitutional Limitations (6th ed.), p. 216 et seq. In the case at bar determination of the question becomes for the first time unavoidable.

In my opinion the trial judge in making the comments objected to did not exceed the powers possessed by a presiding judge in a common law trial by jury and the exceptions should therefore be overruled.